176 N.J. Super. 540 (1980)
424 A.2d 428
ILENE DIXON AND ROBERT DIXON, PLAINTIFFS-RESPONDENTS,
v.
FOUR SEASONS BOWLING ALLEY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND T/A FOUR SEASONS BOWLING ALLEY & FUN & COCKTAILS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, INDIVIDUALLY & T/A FOUR SEASONS BOWLING ALLEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 25, 1980.
Decided December 11, 1980.
*542 Before Judges MATTHEWS, MORGAN and MORTON I. GREENBERG.
Isaac Henkoff argued the cause for appellant (Klein, Chester, Greenburg & Henkoff, attorneys).
Alan R. Lebowitz argued the cause for respondents.
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
*543 Defendant appeals from a judgment in favor of plaintiffs Ilene Dixon and Robert Dixon, her husband, for personal injuries to Ilene Dixon. Robert Dixon sued per quod. The action was bifurcated, first being tried on liability and then on damages. R. 4:38-2(b). Both trials were to juries.
The evidence at the liability trial showed the following. On October 12, 1975 Ilene Dixon was a patron at defendant's bowling alley in Union, New Jersey. She had previously bowled there about ten times. In addition she had bowled at another bowling alley. She did not own either bowling shoes or a bowling ball. Defendant had shoes available for rental and supplied balls without specific cost to the patrons, the fee for the alley including the ball. On October 12, 1975 defendant had about 240 balls available. Ilene Dixon examined about seven to ten of them and selected one which she considered to be of an appropriate weight. In addition she determined that the holes in the ball fit her fingers. Her selection was made without assistance from defendant. She observed that most of the balls were scratched and chipped but that the one she selected, though chipped, was in better condition than most of the other balls.
After selecting the ball Ilene Dixon bowled several frames without incident. Eventually she was injured when she fell and a chipped portion of the ball cut her finger. As a result this action was brought.
Plaintiffs' complaint alleged that the accident was caused by the defective condition of the bowling alley and the defective condition of the equipment supplied. At the liability trial, however, plaintiffs sought to recover only on a theory that the ball was defective. The judge at the liability trial submitted the matter to the jury on written interrogatories. R. 4:39-1. The jury was instructed that defendant could be liable for negligence in failing to maintain a reasonably safe bowling ball or in strict liability for supplying a defective ball in an unreasonably *544 dangerous condition. The charge included an appropriate provision that defendant's dereliction had to be a proximate cause of Ilene Dixon's injury for plaintiffs to recover. The judge also charged the jury with respect to Ilene Dixon's conduct. On the negligence issue the jury was asked to determine whether she was negligent and if so whether her negligence was a proximate cause of the accident. On the strict liability theory the jury was asked: "Did plaintiff Ilene Dixon unreasonably and voluntarily proceed in the face of a known danger, which conduct was a proximate cause of the accident?" See Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 562-563 (1980); Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 158-164 (1979).
Both plaintiffs and defendant were found negligent but the jury allocated 80% of the negligence to plaintiff Ilene Dixon and 20% to defendant. Since her negligence was greater than defendant's plaintiffs could not recover for defendant's negligence. N.J.S.A. 2A:15-5.1. The jury found defendant liable on the strict liability claim but also found that Ilene Dixon had unreasonably and voluntarily proceeded in the face of a known danger. The jury then determined that each party's conduct contributed 50% to the happening of the accident. Thus plaintiffs could obtain judgment for 50% of the damages proven at the subsequent trial on that issue. See Suter v. San Angelo Foundry & Machine Co., supra, 81 N.J. at 158-164. A damage trial was later held and plaintiffs obtained a substantial verdict. Defendant now appeals from the liability judgment. It contends that the facts established at the liability trial did not justify the court in submitting the case to the jury on a theory of strict liability.
Strict liability is a doctrine which has developed primarily in actions against manufacturers and sellers placing a product in the stream of commerce. See, e.g., Suter v. San Angelo Foundry & Machine Co., supra, 81 N.J. at 168-169; Scanlon v. General Motors Corp., 65 N.J. 582, 590 (1974); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960). In some *545 circumstances it may be a basis of liability for producers of homes for sale. Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965). Strict liability has been said to be established when a plaintiff proves that defendant's product was defective in the sense of not being reasonably suitable, safe and fit for the purposes intended when it left defendant's hands and that the defect was a cause of plaintiff's injury. See Suter v. San Angelo Foundry & Machinery Co., supra, 81 N.J. at 168-171; Scanlon v. General Motors Corp., supra, 65 N.J. at 590-591. Liability does not depend on proof of the defendant's negligence. Cartel Capital Corp. v. Fireco of New Jersey, supra, 81 N.J. at 562-565. Imposition of strict liability has been justified on the basis that the manufacturer or seller is in a better position than the consumer to guard against defects in the product. See Suter v. San Angelo Foundry & Machine Co., supra, 81 N.J. at 169-174.
Not surprisingly attempts have been made by injured parties to expand strict liability in commercial or professional settings involving the use of personal property in which there was no transaction that could be called a pure sale. This is precisely such a case. Such application of the doctrine of strict liability has the potential to generate a substantial expansion of liability in cases of injury on a business premises because traditionally businesses have been liable for injuries to their invitees only when shown to have been negligent. See Bozza v. Vornado, Inc., 42 N.J. 355, 359 (1964); Znoski v. Shop-Rite Supermarkets, Inc., 122 N.J. Super. 243, 248 (App.Div. 1973). Cases in which plaintiffs have sought to have strict liability imposed in situations not involving sales or including more than sales alone are Magrine v. Krasnica, 94 N.J. Super. 228 (Cty.Ct. 1967), aff'd sub nom. Magrine v. Spector, 100 N.J. Super. 223 (App.Div. 1968), aff'd o.b. 53 N.J. 259 (1969); Newmark v. Gimbel's Inc., 54 N.J. 585 (1969) and Cintrone v. Hertz Truck Leasing, 45 N.J. 434 (1965). In Magrine strict liability was not imposed against a dentist who used a defective hypodermic needle which broke off *546 in a patient's jaw. The county court pointed out that the dentist was in no better position to detect the defect than the plaintiff and that the essence of the relationship was the supplying of professional services not dental equipment. 94 N.J. Super. at 234. In Newark v. Gimbel's Inc., a beauty parlor operator was held strictly liable to a patron injured by a solution applied to her hair as part of a permanent wave treatment. The court considered it significant that plaintiff relied on defendant's expertise in the hair treatment. 54 N.J. at 593-594. The court characterized the transaction as hybrid in nature involving both a sale and service. 54 N.J. at 593. In Cintrone strict liability for a defective car was allowed against a large-scale lessor of rental automobiles. The court said that the duty of the lessor to the lessee to supply a fit vehicle could not be less than that owed by a manufacturer to a purchaser. 45 N.J. at 449-450. Cintrone, of course, did not involve an injury on a business premises.
From our reading of these cases we cannot say that every use of personal property by an invitee on business premises will render the owner of the defective property strictly liable for injuries caused by the defect. The potential for expansion of liability in such circumstances is plainly so great that we think that a broad rule of strict liability to an invitee for injuries caused by personal property would be inappropriate. Thus we conclude that strict liability should be imposed in favor of an invitee on a business premises only if appropriate in the circumstances of a particular case. Here the record shows the following: (1) Ilene Dixon selected the ball; (2) defendant did not assist her in the choice; (3) she did not rely on defendant's expertise in making the selection; (4) the defect in the ball should have been no less obvious to Ilene Dixon than defendant; (5) there was no separate charge for the ball; (6) Ilene Dixon could have brought her own ball to defendant's alley; (7) the ball was a portion of a larger service or facility supplied by *547 defendant; (8) possession by Ilene Dixon was intended to be of a very short term; (9) the ball was to be used only on defendant's premises. While we recognize that taken separately the particular facts that we mention might not bar recovery, we are satisfied that in the circumstances of this case the use of the ball was incidental to the use of defendant's premises and the supplying of such equipment should not result in imposition of liability on defendant on any basis other than liability for injuries caused by conditions of the premises. We do not suggest, however, that the absence of any one or even more of the factors mentioned would necessarily change the result we reach.
Our result is consistent with the rationale underlying the development of strict liability. Historically the basis for the imposition of strict liability in a commercial setting was that it was more equitable to place the loss suffered from distribution of a defective product on the manufacturer or vendor who placed it "in the stream of commerce," and who could have guarded against the defects. Suter v. San Angelo Foundry & Machine Co., supra, 81 N.J. at 168-174. We do not see how it can be fairly said that the ball that caused the injury to Ilene Dixon had been placed in the stream of commerce. We further point out that in their complaint plaintiffs alleged that defendant's premises were in a defective condition and that this caused the injury. If the case had been submitted to the jury on that theory unquestionably plaintiffs could not have recovered unless they could have shown negligence on the part of defendant. Bozza v. Vornado, Inc., supra, 42 N.J. at 359. We can discern no logical reason why plaintiffs should have a lesser burden of proof for recovery for an injury caused by the condition of the ball than a condition of the premises.
Since plaintiffs did not recover for defendant's negligence the judgment in favor of plaintiffs against defendant is reversed and the case is dismissed.