Joseph L. WILSON and Nancy Jo Wilson, his wife, Plaintiffs,

v.

DOVER SKATING CENTER, LTD., Defendant.

Superior Court of Delaware, Kent County.

Submitted: July 26, 1989.
Decided: Aug. 15, 1989.

Harry H. Rhodes, III, of Brown, Shiels & Chasanov, Dover, for plaintiffs.

Mary E. Sherlock of Young & Sherlock, Dover, for defendant.

## OPINION

STEELE, Judge.

This is an action brought by Joseph L. Wilson (plaintiff) against Dover Skating Center, Ltd. (defendant) for injuries allegedly received as a result of an accident while skating with rented roller skates provided by defendant. The complaint alleges that defendant is liable under theories of negligence and strict liability. Plaintiff's wife, Nancy Jo Wilson, has joined in the complaint based on her loss of consortium.

Defendant moves for partial summary judgment with respect to the strict liability claim on the basis that defendant "is not a commercial bailor-lessor of roller skates" pursuant to the holding in *Martin v. Ryder Truck Rental, Inc.*, Del.Supr., 353 A.2d 581 (1976).

### I. *The Facts*

Defendant owns and operates a roller skating rink known as the "Dover Skating Center" in Dover, Delaware. On February 23, 1985, plaintiff entered the Dover Skating Center for the purpose of roller skating. Plaintiff paid to the defendant both the normal admission fee and the fee to rent a pair of roller skates for use on defendant's premises. While skating with the rented roller skates, plaintiff fell and injured himself. Plaintiff alleges the proximate cause of the injury to be the "locking" or "freezing" of one or more wheels of the rented skates. Defendant denies this allegation. Plaintiff further alleges defendant is solely responsible for the maintenance and inspection of the skates which it has available for rent to the public and over which defendant has exclusive possession and control except when rented.

### II. *Standard of Review*

The Court's function in passing on a motion for summary judgment is to examne the record to determine whether genuine issues of material fact exist. *See Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver*, Del. Supr., 312 A.2d 322 (1973); *Moore v. Sizemore* Del.Supr., 405 A.2d 679 (1979). If, after viewing the record in a light most favorable to the non-moving party, the Court finds there are no genuine issues of material fact, summary judgment will be appropriate. *Id.; Pullman, Inc. v. Phoenix Steel Corp.*, Del.Supr., 304 A.2d 334 (1973). Summary judgment will not be granted under any circumstances when the record indicates that a material fact is in dispute or, if it seems desirable, to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. *Ebersole v. Lowengrub*, Del. Supr., 180 A.2d 467 (1962).

### III. *Does Strict Liability Apply to Defendant?*

The sole issue in defendant's motion is whether the Delaware Supreme Court's decision in *Martin v. Ryder Truck Rental, Inc.*, 353 A.2d 581 (1986), to allow strict liability in the case of a bailment/lease of a motor vehicle entered into in the regular course of a truck-rental business can be applied in the case of roller skate-rentals for use at an on-site roller skating rink. Defendant argues that it cannot because the holding in *Martin* is factually distinguishable and is extremely limited in scope. This holding is as follows:

We hold today that a bailment-lease of a motor vehicle entered into in the regular course of a truck-rental business is sub-

ject to application of the doctrine of strict tort liability in favor of an injured bystander.

353 A.2d at 582.

Defendant contends that the *Martin* defendant leased motor vehicles as a commercial business. In addition, of the six cases relied upon by the Supreme Court in *Martin*, four of the defendants leased motor vehicles, one leased airplanes and one leased scaffolds and scaffolding materials. Defendant argues the primary distinction between these cases and the Dover Skating Center is that Dover Skating Center is in the business of owning and operating a skating rink and not in the business of leasing personal property, i.e., roller skates. The rental of roller skates for use on the premises is simply incidental to its main business purpose. Defendant argues to impose strict liability under these circumstances would be "to open Pandora's box with regard to strict liability in Delaware." Every business in Delaware in which the rental of equipment is a portion of a larger service or facility would be subject to strict liability. By way of example, these businesses would include "bowling alleys, ice rinks, miniature golf courses, boat yards, yachting clubs, swimming pools and beach clubs." After careful review of *Martin* and its progeny, I am not persuaded that the doctrine of strict liability with respect to bailments and leases should be or was intended to be constrained to facts identical to those in *Martin*.

In *Martin*, the Court extended the doctrine of strict liability to bailments and leases due to the growing motor vehicle-rental business which it said necessitated the imposition of the doctrine. In so doing, the Court recognized a steady and consistent expansion of the concept of strict liability and said:

> [T]he law of products liability has evolved rapidly during the past decade, until it has become the prevailing remedy throughout the country. It is now the rule in approximately two-thirds of the states, including Pennsylvania and New Jersey.

353 A.2d at 584.

The Court further stated that it was free to apply the doctrine of strict liability to a bailment-lease in the common-law tradition since the Uniform Commercial Code did not preempt the field of the law of products liability. The Court explained the public policy considerations for applying the doctrine to the motor vehicle-rental case as:

> (1) [T]he concept that the cost of compensating for injuries and damages arising from the use of a defective motor vehicle should be borne by the party who placed it in circulation, who is best able to prevent distribution of a defective product, and who can spread the cost as a risk and expense of the business enterprise; (2) the concept that the defective motor vehicle was placed on the highways in violation of a representation of fitness by the lessor implied by law from the circumstances and trade practices of the business; and (3) the concept that the imposition upon the lessor of liability without fault will result in general risk reduction by arousing in the lessor an additional impetus to furnish safer vehicles.

*Id.* at 587.

I find each of these considerations equally applicable in the present case.

In the handful of subsequent Delaware cases which discuss *Martin*, the Supreme Court gives some indication of how far the holding was designed to extend. Several cases cite *Martin* for the broad proposition that strict liability is applicable in this State to a bailment-lease without using any limiting language whatsoever. *Cline v. Prowler Industries of Maryland, Inc.,* Del.Supr., 418 A.2d 968, 971 (1980). *See also Pennington v. Peabody Barnes, Inc.,* Del. Supr., No. 358, 1981, slip op. at 2 (1982) [452 A.2d 650 (table) ] (order). Only one indicates that the question remains undecided. In *Castaldo v. Pittsburgh–Des Moines Steel Co., Inc.,* Del.Supr., 376 A.2d 88 (1977), the Court stated:

> As a result of plaintiff's failure to establish the primary element of strict tort liability, *we expressly abstain from deciding whether Delaware accepts the*

*doctrine of strict tort liability in situations other than bailment-lease of a motor vehicle.*

*Id.* at 91 n. 2 (emphasis added). Courts of other jurisdictions have no trouble imposing strict liability for the bailment-lease of a motor vehicle even when the bailor-lessor is not primarily engaged in the business of leasing such items. The test applied in this circumstance is whether or not the transaction occurred "in the normal course of the lessor's business." *Bachner v. Pearson,* Cal.Supr., 479 P.2d 319, 328 (1970); *see also Price v. Shell Oil Company,* Cal. Supr., 466 P.2d 722, 729 (1970). (The court said the lease was not an "isolated or occasional transaction"). Courts seem to be split, however, when personal property other than motor vehicles are leased out by businesses not primarily engaged in the business of leasing. Specifically, in *Gabbard v. Stephenson's Orchard, Inc.,* Mo. Ct.App., 565 S.W.2d 753 (1978), the court held strict liability applicable to the owners of an apple orchard (Stephenson's) who furnished a defective three-legged aluminum ladder to a business invitee who answered Stephenson's advertisement to pick apples for a fee. The ladders furnished by Stephenson's were placed in its orchard as part of its profit-oriented operation and use of ladders was an integral part of such operation. While plaintiff paid no specific rental fee, "there was a rental of ladders in that the cost of furnishing ladders was indirectly charged to its customers in the cost of apples picked." *Id.* at 757. The test applied by the court was whether the defendant was "a bailor or lessor of defective product in the usual course of its business". *Id.* at 757.

In contrast, strict liability did not apply in a case where a business invitee of a municipally-owned golf course was injured when the brakes failed on a rented golf cart. *Katz v. Slade,* Mo.Supr., 460 S.W.2d 608 (1970). *Katz* is factually similar to the case at bar in that separate fees were paid for use of the facility and for rental of the golf cart. In addition, both the golf cart and the roller skates were for use only on the defendants' business premises. The major distinction is that the golf course was municipally-owned and the skating rink is a private, profit-oriented business. The Supreme Court of Missouri used this distinction to reverse the trial court but went on to distinguish the transaction itself by saying:

> Golf carts are supplied to those patrons who desire to use them, as a casual operation, a strictly incidental and collateral convenience. They are rented for use solely on the golf course for short periods of time, for small fees. There is no indication that the patrons are stimulated or induced to rent by widespread advertising ... The transaction more closely resembles a license than a lease; the "renter" is more like the patron who buys a ticket to ride on a merry-go-round than he who leases a Hertz Drive–Ur–Self automobile for a weekend or a week of travel on the public highways.

460 S.W.2d at 613. The *Katz* court noted the standard of care imposed on proprietors of amusement rides is "the duty of exercising the degree of care reasonably commensurate with the character of the amusement or game presented or played within the place...." *Id.* at 613. In other cases, no strict liability was imposed when a business invitee of a grocery store was injured by a defective shopping cart used only on the defendant's business premises. *Keen v. Dominick's Finer Foods, Inc.,* 49 Ill.App.3d 480, 7 Ill.Dec. 341, 364 N.E.2d 502 (1977), or when a business invitee was injured with a defective bowling ball supplied by the bowling alley without a specific fee. *Dixon v. Four Seasons Bowling Alley, Inc.,* App.Div., 176 N.J.Super. 540, 424 A.2d 428 (1980). In *Dixon,* the court found that strict liability is a doctrine which has developed primarily in actions against manufacturers and sellers who placed a product in the stream of commerce and that it cannot fairly be said that the bowling ball had been placed in the stream of commerce. *Id.* 424 A.2d at 431. In addition, the court found:

> The potential for expansion of liability in such circumstances is plainly so great that we think that a broad rule of strict liability to an invitee for injuries caused

by personal property would be inappropriate. Thus we conclude that strict liability should be imposed in favor of an invitee on a business premises only if appropriate in the circumstances of a particular case.

*Id.* 424 A.2d at 431.

Therefore, after careful consideration of the rationale used to apply strict liability to bailment-lease transactions, notwithstanding the cases to the contrary, I am convinced that strict liability should apply to the circumstances here. All the public policy considerations discussed in *Martin v. Ryder Truck Rental, Inc., supra,* p. 582, apply equally to this case. The cost of compensating for injuries resulting from the supply of defective roller skates should be borne by the party profiting from their rental and use by the public. Certainly the owner-lessor of the skates remains in the best position to inspect the skates and to prevent distribution of defective skates to its patrons. The owner can best, through the cost of the rental or the commercial enterprise, generally spread the cost of the risk. The business provides the skates for rental to induce the use of the rink at additional cost. A representation of fitness should be implied as a matter of law from the circumstances of the link to rink usage as a trade practice of the business. The imposition upon the rink owner—skate lessor of liability without fault should result in general risk reduction by encouraging inspection and testing of skates before they are made available to the public. I find that the rental of roller skates in this case was not simply a convenience or casual operation as in *Katz* but was an integral and essential part of defendant's profit-oriented operation. *See Gabbard, supra,* p. 757. One cannot doubt that the roller-skate rentals directly affected plaintiff's profit by allowing anyone and everyone so inclined to use defendant's roller skating rink regardless of whether they owned personal skates. Finally, the rental of roller skates to the plaintiff cannot be considered an isolated or occasional transaction but an essential part of and well within the normal course of defendant's business. I find no significance in whether or not rentals or leases constituted defendant's primary business activity. Here the availability of skates for rental provides a powerful and persuasive inducement to the public to use the skating facility itself. Presuming the obvious, those who did not possess their own personal skates would not otherwise have any incentive to participate in defendant's commercial enterprise. I am confident that this decision does not contradict the Supreme Court's holding in *Martin* and is, in fact, a logical and consistent extension of the holding in that case.

In summary, I find that the remedy of strict liability is available to the plaintiff and that the issue of defective skates is a genuine material fact in dispute. Defendant's motion for partial summary judgement is denied.