690 A.2d 137

JOSEPH RANALLI AND JEANETTE RANALLI, PLAINTIFFS–
APPELLANTS, v. EDRO MOTEL CORPORATION T/A
LOLLIPOP MOTEL, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 20, 1997—Decided March 18, 1997.

Before Judges BAIME and P.G. LEVY.

*Gerard J. Jackson* argued the cause for appellants.

*Kimberly A. Jubanyik* argued the cause for respondent *(Edelstein, Mintzer & Sarowitz,* attorneys; *Lawrence S. Sarowitz,* on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

The novel question presented in this appeal is whether a motel owner is strictly liable in tort for injuries caused by a defective cooking utensil supplied to a guest. We hold that product liability principles are not applicable.

## I.

In June 1991, plaintiff and his wife were weekend guests at defendant's motel. The motel room was furnished with a kitchenette and an electric range. Defendant also supplied cooking utensils. While cooking dinner, plaintiff took a teflon frying pan from under the sink. After washing the pan, plaintiff poured cooking oil into the pan and activated one of the burners. When the oil began to boil, plaintiff noticed that the bottom of the pan had caught on fire. Plaintiff grabbed the pan, opened the front door, and dropped the utensil on the concrete stoop. While engaged in this process, some of the cooking oil splashed onto plaintiff's hand causing severe burns.

Plaintiff and his wife sued defendant, the owner of the motel, contending that defendant was strictly liable for the defective frying pan.[1] They also asserted that defendant was negligent in its maintenance and inspection of the cooking utensils supplied and in failing to provide a fire extinguisher for each room. At the commencement of the trial, the Law Division dismissed plaintiff's strict liability claim on the ground that defendant was neither a manufacturer nor a seller of a defective product.

---

[1] The trial court determined that an expert was not necessary to establish a defect under strict liability principles. In light of our decision, we need not address this issue. *See generally Crawn v. Campo,* 136 *N.J.* 494, 508–09, 643 *A.2d* 600 (1994) (quoting *Butler v. Acme Markets, Inc.,* 89 *N.J.* 270, 283, 445 *A.2d* 1141 (1982)); *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 450, 625 *A.2d* 1110 (1993); *Giantonnio v. Taccard,* 291 *N.J.Super.* 31, 43, 676 *A.2d* 1110 (App.Div. 1996); *Kajetzke v. New Jersey Bell,* 241 *N.J.Super.* 193, 195–97, 574 *A.2d* 539 (App.Div.1990).

The trial proceeded on plaintiff's contention that defendant was negligent. Plaintiff testified that he inspected the teflon pan prior to its use and found nothing amiss. After the accident, Mrs. Ranalli retrieved the pan and noticed a small crack in its bottom. She subsequently discarded the pan.

The owners of the motel, Edward and Judy Roth, testified that their practice is to inspect all cooking equipment when the motel is opened in the spring. They again inspect each unit, including cooking utensils, shortly after Labor Day when they close the motel. The Roths testified that they engage in "random checks" throughout the summer and replace items as needed. In addition, housekeepers employed by the motel are instructed to inspect all inventory after each "checkout" to insure that nothing is taken and that items remain in good condition. Fire extinguishers are located on each floor of the motel as required by code.

Mr. Roth testified that on the day of the incident he heard a smoke detector sound and observed plaintiff standing outside his room with a smoldering pan resting on the concrete stoop. Plaintiff allegedly told Roth that cooking oil had "splattered" when he placed a meatball in the pan.

At the close of the case, the trial court dismissed plaintiff's claim for negligent maintenance and inspection of the pan. The sole question presented to the jury was whether defendant acted unreasonably in failing to furnish each room with a fire extinguisher. The jury returned a verdict of no cause.

## II.

We decline plaintiff's invitation to extend product liability principles to motel owners who supply their guests with cooking utensils as incident to the primary use of the rented premises.[2]

---

[2] Prior to trial, defendant moved for partial summary judgment to dismiss plaintiff's strict liability claim. The Law Division denied defendant's motion. Plaintiff contends that the trial court should have followed that decision under the law of the case doctrine. We reject this argument. See Daniel v. Department

In reaching this conclusion, we recognize that our Supreme Court has imposed strict liability on persons and entities other than manufacturers and sellers of goods. In a lengthening line of decisions, our courts have extended liability to distributors and retailers, *Promaulayko v. Johns Manville Sales Corp.*, 116 *N.J.* 505, 510, 562 *A.*2d 202 (1989); *Santor v. A & M Karagheusian, Inc.*, 44 *N.J.* 52, 64, 207 *A.*2d 305 (1965); *Henningsen v. Bloomfield Motors, Inc.*, 32 *N.J.* 358, 379, 161 *A.*2d 69 (1960), reconditioners and rebuilders, *Michalko v. Cooke Color & Chemical Corp.*, 91 *N.J.* 386, 395, 451 *A.*2d 179 (1982); *Gentile v. MacGregor Manufacturing Co.*, 201 *N.J.Super.* 612, 622, 493 *A.*2d 647 (Law Div.1985), dealers in used items, *Realmuto v. Straub Motors, Inc.*, 65 *N.J.* 336, 344, 322 *A.*2d 440 (1974); *Turner v. International Harvester Co.*, 133 *N.J.Super.* 277, 289, 336 *A.*2d 62 (Law Div. 1975); *but see Santiago v. E.W. Bliss Division*, 201 *N.J.Super.* 205, 226, 492 *A.*2d 1089 (App.Div.1985), providers of services necessarily involving use or sale of a product, *Newmark v. Gimbel's Inc.*, 54 *N.J.* 585, 595, 258 *A.*2d 697 (1969); *Ramos v. Silent Hoist & Crane Co.*, 256 *N.J.Super.* 467, 478, 607 *A.*2d 667 (App. Div.1992), successor corporations, *Nieves v. Bruno Sherman Corp.*, 86 *N.J.* 361, 373, 431 *A.*2d 826 (1981); *Ramirez v. Amsted Industries, Inc.*, 86 *N.J.* 332, 358, 431 *A.*2d 811 (1981), and lessors of certain consumer goods, *Cintrone v. Hertz Truck Leasing & Rental Service*, 45 *N.J.* 434, 452, 212 *A.*2d 769 (1965). *See generally*, William A. Dreier, et al., *New Jersey Products Liability & Toxic Torts Law* § 12.1 to .5 (1996).

We take particular note of the reported decisions imposing strict liability on lessors. In *Cintrone v. Hertz Truck Leasing & Rental Service*, 45 *N.J.* 434, 212 *A.*2d 769, the Court applied the doctrine of strict liability in tort to a non-sales situation, *i.e.*, the

---

*of Transp.*, 239 *N.J.Super.* 563, 581, 571 *A.*2d 1329 (App.Div.), *certif. denied*, 122 *N.J.* 325, 585 *A.*2d 343 (1990). The law of the case doctrine is "a non-binding discretionary rule." Pressler, *Current N.J. Court Rules*, comment on *R.* 1:36 (1997). *See also Lanzet v. Greenberg*, 126 *N.J.* 168, 192, 594 *A.*2d 1309 (1991); *State v. Reldan*, 100 *N.J.* 187, 205, 495 *A.*2d 76 (1985).

lease of a truck whose defect caused personal injury to an employee of the lessee. Noting the "growth of the business of renting motor vehicles, trucks and pleasure cars," *id.* at 448, 212 *A.*2d 769, the Court found "no good reason for restricting . . . warranties [of fitness] to sales." *Id.* at 446, 212 *A.*2d 769. The Court observed that while "[a] sale transfers ownership and possession of the article in exchange for the price[,] a bailment for hire transfers possession in exchange for the rental and contemplates eventual return of the article to the owner." *Id.* at 447, 212 *A.*2d 769. The Court reasoned that "[b]y means of a bailment parties can often reach the same business ends that can be achieved by selling and buying." *Ibid.* Where a sale or rental is essentially an equivalent transaction, the buyer or lessee was said to "rel[y] on the express or implied representation of the person in the business of supplying vehicles . . . that they are fit for . . . use." *Id.* at 450, 212 *A.*2d 769. The Court thus held that "[a] bailer for hire . . . [who] puts motor vehicles in the stream of commerce in a fashion not unlike a manufacturer or retailer" should be subject to strict liability. *Ibid.*

The principles cited in *Cintrone* have not been applied to impose strict liability to providers of premises on which products are used. In *Dixon v. Four Seasons Bowling Alley, Inc.,* 176 *N.J.Super.* 540, 424 *A.*2d 428 (App.Div.1980), we declined to extend strict liability to the owner of a bowling alley which supplied a defective bowling ball to a patron. *Id.* at 546, 424 *A.*2d 428. We said that not "every use of personal property by an invitee on business premises will render the owner of the defective property strictly liable for injuries caused by the defect." *Ibid.* Among the critical factors weighing against strict liability, we pointed to the fact that furnishing the ball was a part of a larger service supplied by the owner, that there was no separate fee charged for use of the ball, and that the patron's possession of the ball was intended to be short term. *Ibid.* We concluded that "use of the ball was incidental to the use of [the] defendant's premises and the supplying of such equipment should not result in imposition" of strict liability. *Id.* at 547, 424 *A.*2d 428.

We reached a similar conclusion in *Dwyer v. Skyline Apartments, Inc.,* 123 *N.J.Super.* 48, 301 *A.*2d 463 (App.Div.), *aff'd,* 63 *N.J.* 577, 311 *A.*2d 1 (1973). There, plaintiff, a tenant in a multiple-family garden apartment owned by the defendant, was injured when a hot water faucet fixture separated from the tile surface, causing scalding water to gush from the pipe. *Id.* at 51, 301 *A.*2d 463. The trial court found the defendant strictly liable in tort. *Ibid.* We reversed, holding that "the nexus between [a landlord's] duty and liability [was] proof of negligence," which required a showing of actual or constructive knowledge of the defective condition causing injury. *Id.* at 52, 301 *A.*2d 463. In reaching this conclusion, we noted that a landlord is not engaged in mass production by placing a product in the stream of commerce exposing it to a large number of consumers. *Id.* at 55, 301 *A.*2d 463. Nor does a landlord generally "create[ ][a] product with a defect which is preventable by greater care at the time of manufacture or assembly." *Ibid.* We concluded that an apartment was "a commodity wholly unlike a product which is expected to leave the manufacturer's hands in a safe condition with an implied representation upon which the consumer justifiably relies." *Id.* at 56, 301 *A.*2d 463.

The principles and policy concerns noted in *Dixon* and *Dwyer* apply with equal force here. We are of the view that to apply the broad brush of strict liability to motel owners would impose an unusual and unjust burden. A motel owner would be faced with absolute liability for every injury claim resulting from an untoward condition in every cranny of the building, whether it is reasonably foreseeable or not. Traditionally, the duty of a motel owner is not to insure the safety of guests but only to exercise reasonable care to discover and correct dangerous conditions. *Cf. Dwyer v. Skyline Apts., Inc.,* 123 *N.J.Super.* at 53, 301 *A.*2d 463. A motel guest reasonably can expect that the owner diligently will inspect the premises for defects and cure any deficiency discovered. But the guest cannot reasonably expect that the owner will correct defects of which he is unaware and that

cannot be discerned by a reasonable inspection. This basic element of actual or constructive notice in the area of motel owner liability "arising out of the duty to maintain and repair [the] rented premises is ingrained in our law as a necessary prerequisite to a finding of negligence—the failure to exercise reasonable care." *Ibid.* We see no compelling need to abrogate these well-settled principles and, as urged by plaintiff, make the owner an insurer for defects in any wire, screw, latch, cabinet door, pipe or other article on and in the premises at the time it is let, despite the fact that the owner neither installed the item nor had any knowledge or reason to know of the defect.

Most of the underpinnings of product liability law do not apply in this situation. Strict liability in other contexts affords maximum protection to the injured plaintiff and works no injustice to the defendants because the manufacturers and retailers can adjust the cost of such protection between them in the course of their continuing business relationship. *See Henningsen v. Bloomfield Motors, Inc.*, 32 *N.J.* at 384, 161 *A.*2d 69. Ordinarily, a motel owner has no continuing business relationship with the manufacturer or retailer of the defective product and cannot exert pressure to make the product safe. The cost of insuring risk will not be distributed along the chain of commerce but will probably be absorbed by the motel owner or perhaps his guests. Because the motel owner will generally not be able to receive indemnity or contribution from others, imposing strict liability makes him the last outpost of liability, even though he may be innocent of any wrongdoing. We reject this approach.

The result we reach is in accord with that recently adopted by the California Supreme Court in *Peterson v. Superior Court*, 10 *Cal.*4th 1185, 43 *Cal.Rptr.*2d 836, 899 *P.*2d 905 (1995). There, the Court overruled its prior decision in *Becker v. IRM Corp.*, 38 *Cal.*3d 454, 213 *Cal.Rptr.* 213, 698 *P.*2d 116 (1985) in which it had held that a residential landlord was strictly liable in tort for an injury to its tenant caused by a defect in a leased dwelling. Noting that its decision in *Becker* had received a "chilly recep-

tion," *see* Jeanne L. Early, Note, *Let the Landlord Beware: California Imposes Strict Liability on Lessors of Rental Housing,* 51 *Mo. L.Rev.* 899 (1986); Emily M. Haliday, Comment, *California's Approach to Landlord Liability for Tenant Injuries: Strict Liability Reexamined,* 26 *U.C. Davis L.Rev.* 367 (1993); Matthew E. Karanian, Note, *Becker v. IRM Corporation: The Final Chapter in the Destruction of Landlord Tort Immunity,* 17 *Pac.L.J.* 995 (1986), the Court abrogated its prior holding and concluded that strict liability principles should not be applied to hotel owners for injuries caused by a defect in the premises. *Id.* at 909. Other jurisdictions have similarly refused to extend product liability principles in this and analogous settings. *See, e.g., Wagner v. Coronet Hotel,* 10 *Ariz.App.* 296, 458 *P.*2d 390 (1969); *Singleton v. Collins,* 40 *Colo.App.* 340, 574 *P.*2d 882 (1978); *Meyer v. Parkin,* 350 *N.W.*2d 435 (Minn.Ct.App.1984); *Alharb v. Sayegh,* 199 *A.D.*2d 229, 604 *N.Y.S.2d* 243 (App.Div.1993); *Winston Properties v. Sanders,* 57 *Ohio App.*3d 28, 565 *N.E.*2d 1280 (1989); *Young v. Morrisey,* 285 *S.C.* 236, 329 *S.E.*2d 426 (1985); *Bolin Dev. Corp. v. Indart,* 803 *S.W.*2d 817 (Tex.Ct.App.1991); *Williams v. Melby,* 699 *P.*2d 723 (Utah 1985); *Lincoln v. Farnkoff,* 26 *Wash.App.* 717, 613 *P.*2d 1212 (1980).

We thus conclude that the trial court did not commit error by dismissing plaintiff's claim based upon strict liability in tort.

## III.

▮ Plaintiff also argues that the trial court erred by refusing to submit to the jury the question of whether defendant was negligent in its inspection of the cooking utensils. This point does not require extended discussion. *R.* 2:11–3(e)(1)(E). Plaintiff presented no evidence that the alleged defect in the pan could have been discovered by the exercise of reasonable care. Plaintiff testified that he carefully inspected the pan prior to the accident and found no defect. The trial court correctly dismissed plaintiff's claim under *R.* 4:40–1.

Affirmed.