[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiffs appeal a decision of the Town of Cromwell Board of Appeals which affirms the cease and desist order of the town's development compliance officer (zoning enforcement officer) which prohibited the maintenance of any horses on the plaintiff's property, and, prohibited the introduction of any further large domestic animal pets over one rabbit, one chicken and two goats to the property. After submission of briefs by the parties, oral argument was held on November 23, 1998. For the reasons stated hereinafter, the plaintiffs' appeal is dismissed.
 I. Facts
On September 9, 1997, Fred Curtin, Development Compliance Officer of the Town of Cromwell sent a cease and desist order to Ronald E. and Candice L. Wing ordering them to remove all horses from their property at 95 South Street, Cromwell. The presence of two horses (one being a pony) there on September 9, 1997 was found by Curtin to be a violation of Town of Cromwell zoning Regulation Section III, 3.1.37, and Section XI, 11.10. The order also stated that the pony was not the Wing's personal pet because it was used at a petting zoo in town "for personal gain" for the summer.
The Wings took an appeal from Curtin's cease and desist order to the Town of Cromwell Zoning Board of Appeals (hereinafter "the Board"). In the appeal the Wings sought the right to maintain "two (2) horses (owned by Applicants for over sixteen (16) years); one (1) pony (owned by the Applicants for almost three (3) years; and, one (1) sheep at the premises. A public hearing was held by the Board on February 3, 1998. (It has been scheduled for earlier dates but was required to be rescheduled for reasons that are not relevant to this appeal.) At the public hearing on the appeal, the plaintiff, Candice Wing and her attorney spoke. CT Page 15119 Documents were submitted into the record in support of the appeal. Lynn Weaver spoke from the public in favor of the appeal. There was public comment in opposition to the appeal from Al Waters, Robert and Deb Cerasani, and Ken Pelletier. Fred Curtin spoke in support of his cease and desist order and supplied a written memorandum to the same effect. Board members questioned some of these individuals and also solicited and received legal counsel from the attorney for the Board. After the close of the public hearing, the Board deliberated. It voted unanimously to affirm the decision of Curtin. This appeal ensued.
The Wing property is located in a residential zone. They purchased the property in 1994. Almost immediately they commenced to house a variety of animal pets at the premises. At that time and to August 19, 1997, the Cromwell Zoning Regulations contained no provisions regulating the housing of horses or other large domestic pets. The Town of Cromwell, during all of that time, had an ordinance which regulated the housing of large animal pets. (Section 82-7 of the Large Animal Pet Ordinances of the Code of the Town of Cromwell). On April 4, 1997, Curtin inspected the Wing property. There was a pony (and no other horses) present. (Exhibit 24). It had been observed at the premises in the past by others as well. Upon reinspection, Curtin found that it was not present on April 15, 1997. It was housed from then until sometime before September 4, 1997 at the O'Toole property in town. On September 4, 1997 it was back at the Wings and has remained there. At that time, one other horse was present as well.
On August 19, 1997 section III, Paragraph 3.1.37 and Section XI, Paragraph 11.10 of the Zoning Regulations of the Town of Cromwell became effective. These regulations require a property owner in the same zone as the Wings to have no less than three acres of non-wetland soils land for the first large animal pet maintained on the property and one-half acre more for each additional large animal pet. The Wing property is 2.30 acres inclusive of wetlands. The non-wetlands classified portion of the plaintiff's property is approximately 4,500 square feet. (Exhibit 23 and its attachments.)
 II. Aggrievement
"[A]ggrievement must be established at the trial court. It is a question of fact for the trial court to determine. (Citations omitted.) Parcesepe v. Zoning Board of Appeals, 154 Conn. 46, 47
(1967); Primerica v. Planning Zoning Commission, 211 Conn. 85, CT Page 15120 93 (1989).
 "To be entitled to an appeal from a decision of planning or zoning authorities, appellant must allege and prove that they were aggrieved parties. They are required to establish that they were aggrieved by showing that they had a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest such as is the concern of all members of the community and that they were specially and injuriously affected in their property or other legal interests. (Citations omitted.)" Gregorio v. Zoning Board of Appeals, 155 Conn. 422, 424-425 (1967).
Candice Wing testified at the hearing of this matter. The court, based on the evidence presented, finds that she and her husband have owned the property at 95 South Street, Cromwell on a continuous, uninterrupted basis since their purchase of that property March 8, 1994. They received a cease and desist order from Curtin dated September 9, 1997. They are adversely affected by the order because it bars them from keeping horses at their property.
The court finds that Candice and Ronald Wing are aggrieved.
 III. Scope of Review
In considering this matter, the court must not substitute its judgement for that of the Zoning Board of Appeals. If there is support in the record for the decision of the Board, it must be sustained.
 "`It is well settled that courts are not to substitute their judgment for that of the board, and that the decisions of local boards will not be disturbed as long as honest judgment had been reasonably and fairly made after full hearing . . . as the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency.' (Citations omitted.) Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 731-32, 546 A.2d 919 (1988), aff'd. 211 Conn. 76, 566 A.2d 1024 (1989). The court's function is to determine on the basis of the record whether substantial evidence was presented to the board to support its findings. Huck v. Inland Wetlands CT Page 15121 Watercourses Agency, 203 Conn. 525, 540, 525 A.2d 940
(1987). `[E]vidence is sufficient to sustain an agency's finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred.'" Mobil Oil Corp. v. Zoning Board of Appeals, 35 Conn. App. 204, 209, 644 A.2d 401 91994).'" Jaser v. Zoning Board of Appeals, 43 Conn. App. 545, 547-548, 684 A.2d 735 (1996).
 IV. Discussion
The Wings have an insufficient amount of real estate to comply with the Zoning Regulations effective on August 19, 1997. They have 2.30 acres and much of it is wetlands classified. The regulations require 3.0 acres of non-wetland classified property. Based on this, the record supports the Board's determination that the maintenance of the horse and pony at the property was not a customary accessory use of the property.
Therefore, the maintenance of any large animal pet at the Wing property on and after August 19, 1997 is permissible only if it constitutes a pre-existing nonconformity.
Plaintiff's incorrectly argue that their compliance with the Town Ordinance Section 82-7 regarding Large Animal Pets is all they need prove. That is wrong. The zoning authority's right to regulate the presence of animals at the property is found atConnecticut General Statutes Section 8-2(a). "The zoning commission of each city . . . is authorized to regulate, within the limits of such municipality . . . The density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes . . ."
Notwithstanding all of that, the Town Ordinance under which plaintiff's claim protection was repealed on June 12, 1997 (plaintiff's counsel speaking, T. p. 24, Exhibit 36).
Plaintiffs also confuse the effect of Connecticut GeneralStatutes Section 22a-40. This statute states that grazing is a permitted use in wetlands, such it is not a regulated activity subject to the oversight of a municipality's wetland agency. Plaintiffs seem to think that means a zoning authority has no such right of regulation for zoning purposes. Put simply, that is not what is stated in the statute. Really, it is an outrageous misguided attempt at statutory construction. CT Page 15122
The Wings claims the right to have these horses on the property. Apparently, the third horse was only present at the time of the initial purchase of the property. (P. 19 and Exhibit 36). The record references one horse and a pony only being on the property at certain times. The Wings' own Memorandum to the Board is the only reference these two animals (Exhibit 12).
 1. The Horse
The court cannot disturb the board finding that no nonconformity was established as to the horse at the time of the passage of the zoning regulations at issue here. "Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." Connecticut General Statutes
Section 8-2(a).
Ms. Wing stated to the Board that the horse had been boarded at another farm. She told the Board that ". . . before all this went down and the new law came into effect, I dragged home one of my horses to make sure something was standing on the property." (T. p. 14, Candy Wing, Exhibit 36). She submitted a statement from the farm that the horse "Glider" was stolen from the stable on August 12, 1997. (Exhibit 28). She borrowed a horse trailer for that purpose from Lynn Weaver. (Exhibit 25). The regulation effective date is August 19, 1997.
The Wings' Memorandum states (after discussing the pony), "A second horse was brought to and kept on the property in early August, 1997." No prior residence at the property is claimed in the Memorandum submitted to the board. The board had the right to rely on the plaintiff's own Memorandum submitted as a part of their appeal.
The board clearly considered these facts. "She made a statement earlier in the evening that it was her intent to bring a large animal there early enough to circumvent the new ordinance." (Board member Brian Fisk, p. 3 deliberation, 2/3/98. (Exhibit 36).
The dragging of the horse to the property did not establish an actual use of the property existing on August 19, 1997. This conduct of the plaintiffs is similar to that which occurred in the Wallingford v. Roberts case: CT Page 15123
"The trial court concluded that the belated effort of the defendants in moving the five trailers onto their land, within twenty-four hours of the time when the regulations were to become operative, did not create an existing nonconforming use. For there to be an existing use, premises must be so utilized as to be known in the neighborhood as employed for a given purpose. Such utilization combines two factors: (1) the adaptability of the land for the purpose; (2) the employment of it within that purpose. In addition, the use must be actual and not merely contemplated. [Citation omitted.]" Wallingford v. Roberts,145 Conn. 682, 684 (1958).
There was sufficient existence in the record for the Board to find the horse at the property did not constitute an existing nonconforming use.
The pony's absence from the property during the period from April to and including (and shortly after) the date of the new regulations therefore raises the question of abandonment of the potential nonconformity (in the sense that the new regulations had not yet passed) as it was existing.
The Zoning Enforcement Officer's position in issuing the cease and desist order was that the plaintiffs have abandoned the nonconforming use of their property regarding the pony. "And abandonment is something that can happen overnight, when you clearly give up the right when you take your pet and you put it on loan with somebody and it's [sic] used for a commercial enterprise, whether profit or non-profit, that ceases to become a pet. And it was the basis of my cease-and-desist order." (Record.)
Plaintiffs incorrectly argue that there can be no abandonment because the pony was not gone for one year or more. The one year provision at Article IX Section 9.1.c. of the Cromwell Zoning Regulations, whatever else it may mean, cannot be the litmus test, or requirement for abandonment. See Connecticut GeneralStatutes Section 8-2.
Whether abandonment occurred is a factual determination. Abandonment in this jurisdiction is a question of fact.Richardson v. Tumbridge, 111 Conn. 90, 93, 149 A. 241. It implies a voluntary and intentional renunciation but the intent may be inferred as a fact from the surrounding circumstances. CT Page 15124Newkirk v. Sherwood, 89 Conn. 598, 605, 94 A. 982, 984, Appealof Phillips, 113 Conn. 40, 46, 154 A. 238. Since, however, the conclusion of intention is an inference of fact, it is not reviewable unless it was one which the trier could not make. (Internal quotation marks removed)." Blum v. Lisbon Leasing,173 Conn. 175, 182 (1977).
The Board found that abandonment had occurred based upon the removal of the pony to Amy's Udder Joy, the utilization of the pony for a commercial enterprise, and the conversation of Mrs. Wing with Curtin at the onset of the removal of the pony. While these events may be vulnerable to more than one interpretation, this court may not substitute its judgment for that of the Board and opt for an interpretation more favorable to plaintiffs. Hornv. Zoning Board of Appeals, 18 Conn. App. 674, 677 (1989). The record supports that the pony was utilized in a commercial enterprise and no longer functionally utilized as a pet. A commercial enterprise need not be non-profit. The pre-existing nonconforming use of the pony as a pet was deemed abandonment by the Board. Such determination based upon evidence in the record can not be deemed arbitrary, capricious or an abuse of discretion.
Parenthetically, it is noted that when the plaintiff Ms. Wing sought to protect herself from the Zoning Regulations to take effect on August 19, 1997, she chose to "drag home" Glider, not the pony.
The defendant has filed a Motion for Sanctions (#110) claiming the plaintiffs' appeal is frivolous. After considering all of the circumstances of this matter, the Motion is denied.
The plaintiffs' appeal is dismissed.
MUNRO, J.