NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2213-15T4

ARJAN LEKA,

 Plaintiff-Appellant,

v.

HEALTH QUEST FITNESS,
HEALTHQUEST OF CENTRAL
JERSEY, LLC, and COULTER
VENTURES, LLC,

 Defendants-Respondents,

and

RAE CROWTHER HOLDINGS, LLC,

 Defendant.
——————————————————————————————

 Argued October 11, 2017 – Decided October 26, 2017

 Before Judges Hoffman, Gilson and Mayer.

 On appeal from Superior Court of New Jersey,
 Law Division, Hunterdon County, Docket No.
 L-0016-13.

 Kathleen Cehelsky argued the cause for
 appellant (Law Office of James C. DeZao, PA,
 attorneys; James C. DeZao, on the briefs).

 Timothy E. Haggerty argued the cause for
 respondent Health Quest Fitness and
 HealthQuest of Central Jersey, LLC (Law
 Offices of Stephen E. Gertler, PC,
 attorneys; Kenneth A. Seltzer, on the
 brief).

 David S. Osterman argued the cause for
 respondent Coulter Ventures, LLC (Goldberg
 Segalla, LLP, attorneys; Mr. Osterman and
 Leah A. Brndjar, on the brief).

PER CURIAM

 Plaintiff Arjan Leka commenced this suit against defendants

HealthQuest of Central Jersey, LLC (HealthQuest) and Coulter

Ventures d/b/a Rogue Fitness (Coulter) alleging he sustained

injuries on June 9, 2012, in an accident involving a hack squat

machine at HealthQuest's fitness facility. Plaintiff also alleged

HealthQuest wrongfully appropriated his likeness for commercial

gain without his knowledge or consent.

 Plaintiff now appeals from April 28, 2015 and September 18,

2015 orders granting summary judgment in favor of defendants, and

an August 20, 2015 order denying plaintiff's motion for

reconsideration. For the reasons that follow, we affirm.

 I.

 The following facts are derived from evidence the parties

submitted in support of, and in opposition to, summary judgment,

viewed in a light most favorable to plaintiff, the non-moving

party. Polzo v. Cty. of Essex, 209 N.J. 51, 56-57 n.1 (2012)

 2 A-2213-15T4
(citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523

(1995)).

 Around the time of the accident, HealthQuest employed

plaintiff as a personal trainer; plaintiff was also a weight-

lifter and body-builder. On June 9, 2012, during his off-hours,

plaintiff was lifting weights at HealthQuest's facility. He placed

an estimated six to seven hundred pounds of evenly distributed

weight on a hack squat machine. After performing at least two

repetitions, plaintiff "went to push up [when] the machine dropped

and crushed [him] under it." He suffered serious injuries, which

have significantly impacted his lifestyle and career.

 In this action, plaintiff argues his injuries resulted from

the hack squat machine's defective design. He asserts causes of

action sounding in products liability and negligence. Plaintiff

also contends HealthQuest wrongfully appropriated his likeness for

commercial gain. Specifically, he alleges a baseball academy

distributed a promotional email that included a photograph of him

teaching a class at the HealthQuest facility.

 Regarding the products liability and negligence claims,

plaintiff contends HealthQuest allowed the hack squat machine to

remain in the stream of commerce despite known risks. He also

argues that Coulter, an Ohio-based sporting and recreational

 3 A-2213-15T4
equipment retailer, markets and sells the product as successor to

Nebula Fitness, LLC (Nebula), the subject machine's manufacturer.

 In support of these claims, plaintiff furnished expert

reports from Harry Ehrlich, an industrial engineer, and Dr. Gordon

Schmidt, a kinesiology specialist. Ehrlich determined the machine

in question lacks lower safety stops1 and product warnings and

safety instructions. Schmidt stated that the machine's lacking

lower stops "deprived [plaintiff] of the protection provided in

other comparable hack squat machines." He further opined

"HealthQuest's failure to provide a safe hack squat machine created

an unreasonably dangerous condition that [caused plaintiff's]

injury."

 HealthQuest filed a motion for summary judgment and a motion

to bar the Ehrlich and Schmidt reports. First, HealthQuest argued

it did not place the hack squat machine into the stream of

commerce, and therefore, as a matter of law it cannot be held

liable under the New Jersey Product Liability Act. N.J.S.A.

2A:58C-1 to -11. Furthermore, it alleged the experts' conclusions

constituted net opinions.

1
 Ehrlich states that lower safety stops would "limit the range of
downward motion such that the sled [would] be prevented [from]
moving beyond the user's intended range of motion, allowing the
user to exit the machine without the need to raise the weights."

 4 A-2213-15T4
 The trial court granted HealthQuest's summary judgment

motion. In its written opinion, the court found HealthQuest never

manufactured, distributed, or sold the hack squat machine, to wit:

HealthQuest never placed the machine into the stream of commerce.

Regarding plaintiff's negligence claim, the court found plaintiff

failed to submit any proof that HealthQuest had notice of the

machine's defective design. It asserted that plaintiff's

proffered evidence — that he heard the machine injured another

employee in 2008 — was inadmissible hearsay as defined by N.J.R.E.

801(c). Finally, the court dismissed plaintiff's appropriation

of likeness claim because he failed to submit any supporting

evidence.

 Subsequently, plaintiff filed a motion for reconsideration

arguing the court failed to "analyze whether a user of equipment

at a gym is the equivalent to a person renting or leasing equipment

and that HealthQuest was in the superior position to inspect,

maintain[,] and warn of safety hazards to the equipment." The

court denied plaintiff's motion, holding plaintiff failed to

demonstrate HealthQuest was part of the chain of distribution, and

his reliance on Cintrone v. Hertz Truck Leasing and Rental

Services, 45 N.J. 434 (1965), was misplaced. Further, regarding

plaintiff's appropriation of likeness claim, the court held his

proffered evidence, a former HealthQuest employee's witness

 5 A-2213-15T4
statement, constituted an impermissible lay opinion on an expert

matter.

 In a separate motion, Coulter filed a motion for summary

judgment arguing plaintiff failed to demonstrate it was a successor

in interest. In a written opinion, the court granted Coulter's

motion, holding that plaintiff failed to present evidence that

Coulter continued to manufacture or market the hack squat machine.

 II.

 We review summary judgment rulings de novo, applying the same

legal standard as the trial court. Townsend v. Pierre, 221 N.J.

36, 59 (2015) (citing Davis v. Brickman Landscaping, Ltd., 219

N.J. 395, 405 (2014)). "Summary judgment must be granted if 'the

pleadings, depositions, answers to interrogatories and admissions

on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact challenged and that the

moving party is entitled to a judgment or order as a matter of

law.'" Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting

R. 4:46-2(c)).

 Thus, we consider whether "the competent evidential materials

presented, when viewed in the light most favorable to the non-

moving party, are sufficient to permit a rational factfinder to

resolve the alleged disputed issue in favor of the non-moving

party." Ibid. (quoting Brill, supra, 142 N.J. at 540). We accord

 6 A-2213-15T4
no deference to the trial judge's conclusions on issues of law and

review issues of law de novo. Nicholas v. Mynster, 213 N.J. 463,

478 (2013).

 A.

 In support of his contention the trial court erred in granting

summary judgment in favor of HealthQuest, plaintiff first argues

the court failed to consider whether HealthQuest essentially

leased the hack squat machine to its customers, thus qualifying

it as a product seller under New Jersey's Product Liability Act

(the Act). See N.J.S.A. 2A:58C-8.

 N.J.S.A. 2A:58C-2 states:

 A manufacturer or seller of a product shall
 be liable in a product liability action only
 if the claimant proves by a preponderance of
 the evidence that the product causing the harm
 was not reasonably fit, suitable[,] or safe
 for its intended purpose because it: a.
 deviated from the design specifications,
 formulae, or performance standards of the
 manufacturer or from otherwise identical
 units manufactured to the same manufacturing
 specifications or formulae, or b. failed to
 contain adequate warnings or instructions, or
 c. was designed in a defective manner.

The Act defines a "product seller" as:

 [A]ny person who, in the course of a business
 conducted for that purpose: sells;
 distributes; leases; installs; prepares or
 assembles a manufacturer's product according
 to the manufacturer's plan, intention, design,
 specifications or formulations; blends;
 packages; labels; markets; repairs; maintains

 7 A-2213-15T4
 or otherwise is involved in placing a product
 in the line of commerce.

 [N.J.S.A. 2A:58C-8]

 In Cintrone, our Supreme Court imposed liability on a truck

lessor for the injuries a lessee sustained due to its vehicle's

apparent brake failure. Cintrone, supra, 45 N.J. at 452. Relying

on Cintrone, plaintiff argues HealthQuest is a product seller

because, in essence, it leases its heavy weight-lifting equipment

to its members.

 We reject this argument and instead agree with the trial

court that the instant facts are more analogous to Dixon v. Four

Seasons Bowling Alley, Inc., 176 N.J. Super. 540 (App. Div. 1980).

In Dixon, we held a bowling alley was not strictly liable when a

defective bowling ball injured a patron. Dixon, supra, 176 N.J.

Super. at 547. In so holding, we focused on several critical

factors, including "that furnishing the ball was a part of a larger

service supplied by the owner, that there was no separate fee

charged for use of the ball, and that the patron's possession of

the ball was intended to be short term." Ranalli v. Edro Motel

Corp., 298 N.J. Super. 621, 626 (1997) (citing Cintrone, supra,

45 N.J. at 547). Accordingly, we held the patron's use of the

bowling ball in Dixon was incidental to her use of the defendant's

premises. Ibid.

 8 A-2213-15T4
 Similarly, plaintiff's use of the hack squat machine was

incidental to his use of the HealthQuest facility. Plaintiff's

contention that his hack squat use was not incidental lacks

support. He provides no support for his assertion that "the

average consumer" joins fitness centers "for the heavy equipment."

Furthermore, plaintiff's attempt to differentiate "immovable,

heavy [gym] equipment" from bowling balls puts form over substance.

 HealthQuest did not manufacture, sell, or distribute the

subject hack squat machine. Plaintiff's argument that HealthQuest

became a product seller because it leases its equipment to members

lacks merit. Accordingly, HealthQuest is not subject to liability

under New Jersey's Product Liability Act, N.J.S.A. 2A:58C-1 to -

11.

 B.

 Plaintiff also contends the trial court erred in dismissing

his common law negligence claim. Namely, he argues the trial

court incorrectly held he failed to produce admissible evidence

demonstrating HealthQuest had notice of the hack squat machine's

defective design.

 Preliminarily, common law negligence requires notice and an

opportunity to cure the defect before liability can be imposed.

See Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993); see

 9 A-2213-15T4
also Carter Lincoln Mercury, Inc. Leasing Div. v. EMAR Grp., Inc.

135 N.J. 182, 195-96 (1994). Furthermore, Rule 1:6-6 provides:

 If a motion is based on facts not
 appearing of record or not judicially
 noticeable, the court may hear it on
 affidavits made on personal knowledge,
 setting forth only facts [that] are
 admissible in evidence to which the
 affiant is competent to testify and which
 may have annexed thereto certified copies
 of all papers or parts thereof referred
 to therein.

 Plaintiff's proffered evidence of prior notice consists of a

former HealthQuest employee's hand-written witness statement

describing an incident where a hack squat machine injured him in

2008. Notably, the former employee neither made the statement

under oath or affirmation, nor did he include a certification

subjecting himself to punishment in the event he willfully made

false statements. See R. 1:4-4(b).

 The former employee's indication that his statement "is true

and correct to the best of [his] knowledge and belief" is

inadequate to satisfy our court rules. Ibid.; see also Pascack

Cmty. Bank v. Universal Funding, LLP, 419 N.J. Super. 279, 288

(App. Div. 2011) (holding the plaintiff's "certification had no

evidentiary value" because it failed to conform to Rule 1:6-6 and

1:4-4(b)'s requirements.). Further, contrary to plaintiff's

assertion, his experts' reports do not address the notice issue.

 10 A-2213-15T4
 Additionally, as the trial court correctly determined, the

former employee's statement "does not constitute admissible

evidence because it is a lay opinion on a matter that requires

expert testimony, namely[,] that the 2008 accident was caused by

a defective machine." The trial court correctly ruled inadmissible

plaintiff's proffered evidence of prior notice of the hack squat

machine's alleged defect.

 C.

 Plaintiff further argues the trial court erred in granting

Coulter's summary judgment motion because Coulter purchased assets

from Nebula, thus subjecting Coulter to successor liability. We

disagree.

 The general rule is that "when a company sells its assets to

another company, the acquiring company is not liable for the debts

and liabilities of the selling company simply because it has

succeeded to the ownership of the assets of the seller." Lefever

v. K.P. Hovanian Enters. Inc., 160 N.J. 307, 310 (1999). However,

the product-line exception to the general rule, adopted by our

courts and other jurisdictions, provides that a corporation that

continues to manufacture and market the same product line after

purchasing a substantial part of the previous manufacturer's

assets "may be exposed to strict liability in torts for defects

in the predecessor's products." Ibid.

 11 A-2213-15T4
 Our Supreme Court emphasized that courts should focus "on the

successor's continuation of the actual manufacturing operation and

not on commonality of ownership and management between the

predecessor's and successor's corporate entities." Ramirez v.

Amsted Indus., Inc., 86 N.J. 332, 347 (1981). Furthermore,

"[p]laintiff bears the burden of establishing that a party is a

successor corporation." Potwora v. Land Tool Co., Inc., 319 N.J.

Super. 386, 406 (citing Ramirez, supra, 86 N.J. at 332), certif.

denied, 161 N.J. 151 (1999).

 Here, plaintiff merely established that Coulter purchased

assets from Nebula. He fails, however, to put forth any evidence

that Coulter continued to manufacture or market the hack squat

machine. Accordingly, the product-line exception is inapplicable,

and the trial court correctly held plaintiff did not carry his

burden.

 III.

 Finally, plaintiff argues the trial court erred in dismissing

his appropriation of likeness claim because it required him to

produce evidence that is not required as a matter of law. Again,

we disagree.

 "One who appropriates to his own use or benefit the name or

likeness of another is subject to liability to the other for

invasion of his [or her] privacy." Restatement (Second) of Torts

 12 A-2213-15T4
§ 652C. Therefore, to establish a prima facie case for invasion

of privacy by appropriation of likeness, a plaintiff must

establish: 1) the defendant appropriated the plaintiff's likeness,

2) without the plaintiff's consent, 3) for the defendant's use or

benefit, and 4) damages. See Faber v. Condecor, Inc., 195 N.J.

Super. 81, 86-90 (App. Div.), certif. denied, 99 N.J. 178 (1984).

 Notably, courts have consistently required plaintiffs to show

that defendants received a commercial benefit through the

unauthorized use of plaintiff's likeness. See McFarland v. Miller,

14 F.3d 912, 919 n.11 (3d Cir. 1994) ("In New Jersey, to sustain

an action claiming misappropriation of the image of another, a

commercial purpose must be present."). Furthermore, in Castro v.

NYT Television, we held:

 [n]o one has the right to object merely
 because his [or her] name or his [or her]
 appearance is brought before the public,
 [because] neither is in any way a private
 matter and both are open to public
 conversation. It is only when the publicity
 is given for the purpose of appropriating to
 the defendant['s] benefit the commercial or
 other values associated with the name or the
 likeness that the right of privacy is invaded.

 [Castro v. NYT Television, 370 N.J. Super.
 282, 297 (App. Div. 2004) (quoting Restatement
 (Second) of Torts § 652(c) comment d (1977)).]

 Here, the sole support for plaintiff's claim is his statement

that someone told him a baseball academy distributed promotional

 13 A-2213-15T4
materials that included a photograph of him training a client at

the HealthQuest facility. Plaintiff fails to submit any proofs,

including the email in question, to support his assertion, and the

record is devoid of any evidence that HealthQuest used plaintiff's

likeness to obtain commercial benefit. Because plaintiff failed

to establish that HealthQuest used his image in a manner that

furthered a commercial or trade purpose, or that his likeness was

used in anything more than an incidental manner, we discern no

basis to disturb the dismissal of this claim.

 Affirmed.

 14 A-2213-15T4