774 A.2d 515 (2001)
340 N.J. Super. 204
STATE of New Jersey, Plaintiff-Respondent,
v.
Antonio MUNOZ, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Hector Pantoja, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued and Submitted March 14, 2001.
Decided April 26, 2001.
*517 Wakely Paul, argued the cause for appellant Antonio Munoz.
Peter A. Garcia, Acting Public Defender, for appellant Hector Pantoja (Alan I. Smith, Designated Counsel, of counsel and on the brief).
Pia S. Perez, Assistant Prosecutor, argued the cause for respondent in No. A-2388-98T5 (William H. Schmidt, Bergen County Prosecutor, attorney in Nos. A-2388-98T5 and A-2548-98T4; Nicholas Ostuni, Assistant Prosecutor, of counsel and on the briefs).
Before Judges BAIME, CARCHMAN and LINTNER.
*516 The opinion of the court was delivered by LINTNER, J.A.D.
These two appeals, which we decide back to back, arise from Bergen County Indictment No. 95-05-0622 which charged each defendant with burglary of an automobile, N.J.S.A. 2C:18-2 (Count One); theft of a motor vehicle, N.J.S.A. 2C:20-3 (Count Two); receiving a stolen motor vehicle, N.J.S.A. 2C:20-7 (Count Three) armed robbery, N.J.S.A. 2C:15-1 (Count Four and Five); possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4d (Count Six) and unlawful possession of a knife, N.J.S.A. 2C:39-5d (Count Seven).
From March 3 through March 12, 1997, Munoz and Pantoja were tried before a jury. Counts One and Two were dismissed by the judge in response to a joint defense motion for judgment of acquittal at the end of the State's case. A mistrial was entered after the jury announced that it was unable to reach a unanimous verdict. A second trial was scheduled before another judge. Prior to the commencement of the second trial, the judge granted *518 defendants' joint motion to declare Ricky Rodriguez, a defense witness, unavailable, thereby allowing his prior sworn testimony to be read to the jury, N.J.R.E. 804(a)(4). Although unsuccessful in a similar motion made before the start of the first trial, the new trial judge granted the State's motion prior to the commencement of the second trial to permit one of the victims, Corporal Javier Torres, to wear his United States Marine uniform during his testimony. Following a five day trial, the jury found both defendants guilty on all the remaining counts.
Appropriate fines and penalties were imposed. After mergers, the trial judge sentenced both defendants to an extended term of thirty-years imprisonment with ten-years parole ineligibility on Count Four.
On appeal, Munoz raises the following points:
POINT I
THE DUE PROCESS CLAUSE OF THE U.S. CONSTITUTION AND THE STATE CONSTITUTION REQUIRE THE STATE TO PROVE EVERY ELEMENT OF A CRIMINAL OFFENSE BEYOND A REASONABLE DOUBT.
REQUIRING THE STATE TO BEAR AND DISCHARGE THAT BURDEN IS ESSENTIAL TO THE PROTECTION OF A DEFENDANT'S BASIC CONSTITUTIONAL RIGHTS: DUE PROCESS, TRIAL BY JURY AND THE RIGHT TO REMAIN SILENT.
POINT II
IT IS IMPROPER TO DEMEAN THE ROLE OF A DEFENSE ATTORNEY. THE PROSECUTION MAY NOT IMPUGN THE INTEGRITY OF A PARTICULAR LAWYER OR THAT OF LAWYERS IN GENERAL, WITHOUT A BASIS IN FACT, AS A MEANS OF IMPUTING GUILT TO THE DEFENDANT.
Pantoja raises the following arguments:
POINT I
THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN PERMITTING JAVIER TORRES TO WEAR A MARINE UNIFORM IN COURT DURING HIS TRIAL TESTIMONY.
A. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT APPLYING "THE LAW OF THE CASE" DOCTRINE TO THE RULING WHICH PRECLUDED THE WITNESS FROM WEARING HIS MARINE UNIFORM DURING HIS TESTIMONY.
B. THE COURT ABUSED ITS DISCRETION BECAUSE AN UNJUST RESULT OCCURRED.
POINT II
THE PROSECUTOR'S STATEMENT MADE IN SUMMATION THAT CO-DEFENDANT'S COUNSEL "CONCOCTED" EVIDENCE WAS "SIMPLY INEXCUSABLE" AND "SO EGREGIOUS" AS TO HAVE DEPRIVED THE DEFENDANT OF A FAIR TRIAL.
POINT III
IMPOSITION OF AN EXTENDED TERM SENTENCE OF THIRTY (30) YEARS WITH TEN(10) YEARS OF PAROLE INELIGIBILITY WAS MANIFESTLY EXCESSIVE AND AN ABUSE OF DISCRETION BY THE SENTENCING COURT.
A. THE COURT ABUSED ITS DISCRETION IN FINDING AGGRAVATING FACTOR N.J.S.A. 2C:44-1(A)(11) (A NON-CUSTODIAL SENTENCE WOULD BE PERCEIVED BY THE DEFENDANT AS THE COST OF DOING BUSINESS)
*519 (B) IMPOSITION OF A BASE SENTENCE OF THIRTY (30) YEARS WITH TEN (10) YEARS OF PAROLE INELIGIBILITY WAS MANIFESTLY EXCESSIVE AND AN ABUSE OF DISCRETION.
We reject defendants' arguments and affirm.
On Friday evening, November 25, 1994, Javier Torres and Joachim "Jack" Ferreira were working as attendants at the Bridge Exxon station in Lyndhurst. At approximately 8:15 p.m. a burgundy Mitsubishi GT 3000 with four occupants pulled up in front of the gas station. At the time, Ferreira and Torres were inside the office. Ferreira went outside to assist the driver. According to Ferreira, the driver of the vehicle asked directions to Morristown. After providing directions, Ferreira was asked by one of the passengers if he could use the bathroom. Ferreira pointed out the location of the bathroom and returned to the office. Torres was outside assisting another customer. Two of the passengers came out of the bathroom and entered the office. They attempted to use a vending machine to purchase a bag of chips. However, the machine would not accept their dollar. One of the passengers, later identified as Munoz, approached Ferreira and exchanged bills. According to Ferreira, Munoz was two feet away from him when he approached him to exchange the bill. The new bill was accepted by the machine, and the two passengers left the station after purchasing a bag of chips. Torres then returned to the office.
A short time later, the Mitsubishi returned and pulled up near the bathroom. Ferreira noticed that the driver entered the bathroom, leaving the driver-side door open. The driver then returned to the vehicle and pulled it in front of the garage bays. Munoz and another passenger, later identified as Pantoja, exited the vehicle and entered the office. They each purchased a soda from the vending machine. Ferreira identified Munoz as being the same individual with whom he had exchanged the bill earlier. He described Munoz as appearing to be between 18 and 22 years old, approximately five feet, ten inches in height, with medium to light skin color, "peach fuzz" facial hair and a mustache. He also testified that Munoz had box type hair cut, about one inch high, with waves through it, and shaved sides. He explained that Munoz's facial complexion appeared to have "small pot [sic] holes." Ferreira indicated that he got a pretty good look at the other passenger as well. He described him as dark skinned with a thick mustache.
Ferreira related that, while he was sitting at the desk, he was grabbed by Pantoja who put a knife to his neck. Ferreira responded by saying "stop" and tried to free himself. Simultaneously, Munoz came around to Torres, put his hand on Torres's chest and began pushing him against the counter. Torres, who was in a good position to see Pantoja, described him as approximately 19 years old, five feet, eight inches tall, with black hear, a thick mustache and, what appeared to be, a two-day growth on his face. He was wearing a brown South Pole coat, a black ski hat with "Newark" written on the front, and Timberland blue jeans. Torres testified that both men were Hispanic. Because the dull side of the knife was against Ferreira's neck, Torres, thinking a joke was being perpetrated, made the statement that "you're funny." In response, Pantoja turned the knife around, placed the point against Ferriera's throat and started to press down. According to Ferreira, Pantoja, in response to Torres's comment, first took the knife from his neck, poked him in the ribs, then brought the blade against *520 his neck and in a loud vicious voice demanded "give me the money."
Ferreira immediately pulled approximately $400 out of his pocket and handed it over his shoulder to Pantoja. Torres reached up to his left breast pocket and realized that Munoz was holding a knife to his chest. He told Munoz that the money was in his breast pocket and Munoz reach in and grabbed it. With money in hand, both defendants then ran out of the station and sped off in the Mitsubishi. Ferreira followed in a failed attempt to see the license plate number while Torres called the police.
Lyndhurst Police Officer Scott Hild arrived within minutes. Although Torres did not get a good look at Munoz, he was able to describe Pantoja. Based upon the their collective descriptions, Hild was able to obtain a complete description of both suspects. He also interviewed a motorist, Patricia Nolan, who had been passing by at the time the suspects left the station. Nolan, who was called as a witness for the State, related that, as she was driving by the station she saw an individual run out of the office and get into a car that then sped away with its lights off. The car then pulled up behind her and the driver began flashing the lights. Nolan pulled over to let the vehicle pass and then copied down the license plate number on a piece of paper she took from her purse. She then drove to the station to see if anyone had been hurt.
A subsequent police investigation revealed that the Mitsubishi belonged to a woman named Robin Budnick. Budnick testified that her car was stolen earlier the same evening at around dusk from the parking lot of the Princeton Ski Shoppe, located on Route 3 in Clifton, a distance of approximately two to three miles from the Bridge Exxon.
Hild waited at the scene until Sergeant Paul Crupi arrived. Before leaving the scene, Crupi recovered two soda cans and a dollar bill that had been left behind by the perpetrators. No fingerprints were recovered from the items left at the scene. He later met with both victims who gave him a detailed statement of what had occurred.
Approximately one week after the robbery, Torres went to Frank's Pizzeria in Newark to purchase dinner for his family. While he was waiting for his order, he saw Pantoja standing approximately four feet away from him. According to Torres, Pantoja was wearing the same hat and coat. He still had the mustache but the rest of his face was clean shaven. After making eye contact, Pantoja nodded. Torres collected his order and left. He was too scared to say anything while he was at the pizzeria. As soon as he arrived home, he called the Lyndhurst Police and advised them that he had seen one of the suspects.
Lyndhurst Police Detective James O'Connor testified that the Mitsubishi was recovered in Newark on the Monday following the robbery. The lock on both the driver side door and the steering column was missing. In December 1994, following a lead, O'Connor went to the Belleville Police Department to speak with Ricky Rodriguez, who had been arrested in connection with a similar armed robbery of a gas station in Clifton. Rodriguez had been in possession of a stolen vehicle that had been used in the Clifton robbery. Rodriguez claimed that he found the car while "hanging out" in Newark and decided to take it for a ride. According to O'Connor, Rodriguez named Pantoja as having committed the armed robbery of Bridge Exxon. Rodriguez also gave O'Connor the name of the second suspect.
Based upon the information provided by Rodriguez, O'Connor arranged to have two *521 photographic arrays prepared. On December 19, 1994, Torres identified Pantoja from one of the arrays. Torres was unable to identify Munoz from the second array. Ferriera, however, was able to identify each defendant from both arrays.
Rodriguez's testimony during the first trial revealed that following his arrest in Newark on December 4, 1994, he was beaten and kicked while in the custody of the Belleville police department during a five-day period. He denied telling the police that Pantoja and Munoz were involved in the Bridge Exxon robbery. According to Rodriguez, he was shown a photograph of Pantoja and asked to identify him as being involved. Rodriguez maintained that he never told the police that Pantoja was involved in the robbery. He also indicated that he was never shown a picture of Munoz. Eventually, he entered a plea of guilty to aggravated assault on a police officer, receiving stolen property and attempting to elude. He was sentenced to probation. His sentence was later converted to a flat four-year term as a result of violation of probation. Rodriguez also denied identifying Pantoja when he was approached and asked by Pantoja's brother whether he had "ratted" on Pantoja.
Lisa Cruz testified on behalf of Munoz. She indicated that at the time of the robbery she was Munoz's girlfriend. She related that the evening of the robbery, was the day after Thanksgiving and that she and Munoz were together the entire evening playing cards. On cross-examination, she admitted that she could not recall what she and Munoz had done the day after Thanksgiving in 1992 or 93. She also testified that she hired Munoz's attorney and that the only reason she remembered the events of November 25, 1994, was because she was prompted by Munoz's attorney to remember what she did on the day in question. Otherwise she conceded she would not have had an independent recollection that she and Munoz were together on the evening of November 25, 1994.

I.
We first consider Munoz's argument that the prosecutor's comments during summation that the defense had not brought Munoz over to the jury to view his face regarding the existence of pock marks represented a violation of his Fifth Amendment right to remain silent and shifted the burden of proof to Munoz to show his innocence. It is important first to view the context in which the prosecutor's comments were made. During the State's case, Ferreira was asked on direct examination whether he could see the pock marks on defendant's face from his position on the witness stand. When Ferreira responded that he was too far away the State asked permission, without objection, to have Ferreira step down and walk to a point in the court room closer to Munoz. He walked to the point and testified that, even though he was closer to Munoz on the night of the robbery, he could see the pock marks on Munoz's face from the spot in the courtroom where he was standing. Defense counsel in his remarks to the jury said the following:
What did Mr. Ferreira say to the police officer .... it was a man with pock marks on his face like craters. Look at Mr. Munoz as much as you like, as long as you like, you have seen him for as many days as we have [at] this trial, and ask yourselves where are those pock marks, like craters on his face.
In her summation, the prosecutor responded:
[I]t is interesting how we have heard all this talk about, you can't see craters from where you are, interesting, interesting, and yet nobody actually brings Antonio Munoz up here to you. Jack *522 Ferreira told you, and from the witness stand you can't see the pock marks on his face, Jack Ferreira from over here, when he came over here, he said, well this is a little further than I was from him that night, but even from here I can see it, that's what Jack told you, and you know what, I think at this point it would be appropriate to have Antonio Munoz come over here, cause everybody has told you [that] you can't see pock marks, but they haven't brought him up here. They just expect you to take their word.
The State points out in its brief that Munoz was seated at the far side of counsel, away from the jury. We note that the jury was in a position to see how close Ferreira was when seated at the witness stand and when standing in a position close enough to testify that he could observe the described facial characteristics.
A prosecutor is permitted to respond to an argument raised by the defense so long as it does not constitute a foray beyond the evidence adduced at trial. See State v. Wilson, 128 N.J. 233, 241-42, 607 A.2d 1289, (1992); State v. Johnson, 287 N.J.Super. 247, 266, 670 A.2d 1100 (App.Div.), certif. denied, 144 N.J. 587, 677 A.2d 759 (1996). These comments were in direct response to defense counsel's statements calling into question Ferreira's testimony concerning Munoz's identifiable facial characteristics and the distance from which they could be seen. When reviewing the State's response, we "must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." United States v. Young, 470 U.S. 1, 12, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1, 11 (1985). We are satisfied that the prosecutor's remarks, in the context in which they were given, did no more than balance the scales. We do not perceive that the State's invited response unfairly prejudiced defendant. State v. Engel, 249 N.J.Super. 336, 379, 592 A.2d 572 (App.Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1991).
Moreover, we do not find any merit in Munoz's argument that the prosecutor's comments shifted the burden of proof or violated his right to remain silent. Asking a defendant to stand, speak, walk or display identifying characteristics, such as a scar, does not involve testimonial evidence and, therefore, does not violate a defendant's Fifth Amendment right against self-incrimination. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); State v. King, 44 N.J. 346, 209 A.2d 110 (1965). We are likewise satisfied from our review of the entire record including the trial judge's opening remarks to the jury and final instructions, that the jury was appropriately instructed that the burden of proof remains with the State and never shifts to the defendant.

II.
We next consider both defendants' challenge to the propriety of the following remarks made by the prosecutor immediately following her statements concerning the defense's failure to bring Munoz close to the jury.
I know what Lisa Cruz said, but come on, I mean, Lisa Cruz, the mother of his child, Lisa Cruz who basically comes in here and tells you that the alibi was concocted by her and [Munoz's counsel] after she goes to hire him.
Munoz's counsel's objection was sustained by the judge after the prosecutor responded that she thought it a fair comment. The judge advised the jury to "disregard the conclusion as to the word concocted," indicating that "they [were to] make their own determination based on what they heard." At the conclusion of summations, the judge asked the attorneys if they *523 wished to be heard based upon the closing arguments. Counsel for Pantoja then entered her objection, stating that the prosecutor's use of the word "concocted" was tantamount to accusing Munoz's attorney of unethical conduct. The judge responded "I told the jury to disregard that."
Defendant argues that he was denied a fair trial because the prosecutor made comments during summation which amounted to prosecutorial misconduct. Although a prosecutor has considerable leeway in presenting a summation, State v. Chew, 150 N.J. 30, 84, 695 A.2d 1301 (1997), cert. denied, 528 U.S. 1052, 120 S.Ct. 593, 145 L.Ed.2d 493 (1999), she may not exceed the parameters of "permissibly forceful advocacy" established by decisional law. State v. Marshall, 123 N.J. 1, 161, 586 A.2d 85 (1991), cert. denied, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 694 (1993). See also State v. Perry, 65 N.J. 45, 47, 319 A.2d 474 (1974); State v. Mayberry, 52 N.J. 413, 437, 245 A.2d 481 (1968), cert. denied, 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969). It is improper for a prosecutor during summation to demean the role of defense counsel or cast unjust aspersions upon a lawyer's motives. State v. Thornton, 38 N.J. 380, 397, 185 A.2d 9 (1962), cert. denied, 374 U.S. 816, 83 S.Ct. 1710, 10 L.Ed.2d 1039 (1963); State v. Pindale, 249 N.J.Super. 266, 286, 592 A.2d 300 (App.Div.1991); State v. Lockett, 249 N.J.Super. 428, 434, 592 A.2d 617 (App. Div.1991), certif. denied, 127 N.J. 553, 606 A.2d 366 (1991); State v. Sherman, 230 N.J.Super. 10, 16, 552 A.2d 621 (App.Div. 1988). A prosecutor should not, without support in the evidence, accuse defendant of conspiring with defense counsel to conceal or distort the truth. Id. at 19, 552 A.2d 621.
It is, however, not improper for a prosecutor to comment on the credibility of a defense witness's testimony. State v. Robinson, 157 N.J.Super. 118, 120, 384 A.2d 569 (App.Div.), certif. denied, 77 N.J. 484, 391 A.2d 498 (1978). See State v. Purnell, 126 N.J. 518, 538, 601 A.2d 175 (1992). After the judge instructed the jury to disregard the word "concocted," the prosecutor said:
Lisa Cruz went to retain [defense counsel] and [defense counsel] told her that this occurred after Thanksgiving, try to remember what you were doing, that's what you heard. Not that Lisa Cruz had any independent recollection whatsoever of what she was doing, it was only by prompting that she was able to come up with this story, this meaningless event, and in fact, indicate that what she did on that Friday wasn't any different from what she did any other Friday and I think her words were also, the reason why she remembered this was because something bad supposedly happened. That's not credible testimony, Ladies and Gentlemen, something bad supposedly happened, but not to her and that's ... how she is able to come in and tell you that Antonio Munoz was with her on that day. I submit it is clear and you can assess her credibility, it is clear where this alibi came from, Ladies and Gentlemen, and it didn't spring from the truth.
Here, the objected-to remarks essentially question the credibility of Lisa Cruz's testimony that Munoz was with her during the time the armed robbery took place. It was improper for the prosecutor to imply that defense counsel played a role in distorting the facts. Nevertheless, the prosecutor's dereliction was isolated. Furthermore, the trial judge immediately instructed the jury to disregard the offensive comment. State v. Watson, 224 N.J.Super. 354, 362, 540 A.2d 875 (App. Div.), certif. denied, 111 N.J. 620, 546 A.2d 537, cert. denied, 488 U.S. 983, 109 S.Ct. *524 535, 102 L.Ed.2d 566 (1988). Although mindful that we might reach a different result under more flagrant circumstances, we do not believe, in the context of this trial, that the prosecutor's comment alone was sufficiently egregious to deprive defendant of his right to a fair trial, thus warranting reversal. See R. 2:10-2; State v. Feaster, 156 N.J. 1, 69, 716 A.2d 395 (1998).

III.
We deal next with the contention that the trial judge abused his discretion by not applying the doctrine of "law of the case" and permitting Torres to wear his service uniform while he testified. We first set the background. Prior to the first trial, the State advised the judge that Torres, as an active member of the United State Marines, was required to wear his dress uniform when appearing in public. The judge felt differently and ordered Torres to wear civilian clothing during trial. At the commencement of the second trial, in response to the State's motion that was objected to by the defense, the judge permitted Torres to wear his uniform. The judge further conducted a voir dire of the jury panel to determine whether any of them or any members of their families were in the military and whether they would be influenced in any way by the presence of a uniform.
We reject the argument that the "law of the case" doctrine applies to the circumstances presented here. The "law of the case" doctrine is a discretionary rule. Brown v. Township of Old Bridge, 319 N.J.Super. 476, 494, 725 A.2d 1154 (App.Div.), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999). It is "restricted to preventing relitigation of the same issue in the same suit." Ibid. (quoting Slowinski v. Valley Nat'l Bank, 264 N.J.Super. 172, 180-81, 624 A.2d 85 (App.Div.1993)). However, a court is never irrevocably bound before it renders a final decision. The doctrine is to be applied flexibly in the interest of justice, even if it requires relitigation of an earlier ruling prior to final judgment. Southport Dev. Group, Inc. v. Township of Wall, 295 N.J.Super. 421, 430, 685 A.2d 84 (Law Div.1996), aff'd on other grounds, 310 N.J.Super. 548, 709 A.2d 226 (App.Div.), certif. denied, 156 N.J. 384, 718 A.2d 1213 (1998); see also Ranalli v. Edro Motel Corp., 298 N.J.Super. 621, 624-25 n. 2, 690 A.2d 137 (App.Div.1997) (noting that doctrine of law of the case is a "non-binding discretionary rule").
Where a mistrial occurs, the admissibility of evidence is rendered nugatory, in which case "law of the case" does not bind a subsequent judge to the same ruling. State v. Hale, 127 N.J.Super. 407, 412-413, 317 A.2d 731 (App.Div.1974). The discretionary nature of the "law of the case" doctrine calls upon a judge to balance deference toward a prior ruling with concern for the pursuit of justice, especially, the search for the truth. State v. Reldan, 100 N.J. 187, 205, 495 A.2d 76 (1985). Finally, as an "adjective concept" we have observed that the doctrine "should not be used to justify an incorrect substantive result." Hart v. City of Jersey City, 308 N.J.Super. 487, 498, 706 A.2d 256 (App. Div.1998)
Applying these considerations, we are convinced that the prior ruling did not embrace either a factual or legal issue which was litigated in the case. Even if one could say that it embraced a litigated issue, the subsequent mistrial rendered it inconsequential. A trial judge has the ultimate responsibility to control the trial that takes place in the court room and is given wide discretionary latitude. State v. Castoran, 325 N.J.Super. 280, 285, 739 A.2d 97 (App.Div.1999), certif. denied, 163 N.J. 78, 747 A.2d 286 (2000); Horn v. Village Supermarkets, *525 Inc., 260 N.J.Super. 165, 175, 615 A.2d 663 (App.Div.1992), certif. denied, 133 N.J. 435, 627 A.2d 1141 (1993). Discretion to control one's courtroom has been held by us to include permitting a National Guard-uniformed former prosecutor's investigator to wear his uniform subject to proper cautionary instruction. State v. Scherzer, 301 N.J.Super. 363, 467, 694 A.2d 196 (App.Div.), certif. denied, 151 N.J. 466, 700 A.2d 878 (1997). We have declared that if "a party is a member of the armed services, a firefighter, or a priest, when appearing in court he or she should be entitled to dress in a manner ordinary to him or her." Id. (quoting Ryslik v. Krass, 279 N.J.Super. 293, 298, 652 A.2d 767 (App.Div.1995)). The rationale equally applies to a victim in a criminal prosecution. We conclude that the judge appropriately exercised his discretion in permitting Torres to wear his uniform.

IV.
We finally consider Pantoja's contention that the sentence imposed was manifestly excessive and an abuse of discretion. Pantoja concedes that he satisfied the predicate as a persistent offender, thereby exposing him to an extended term pursuant to N.J.S.A. 2C:44-3a. When reviewing a sentence, the appellate court should be careful not to substitute its own judgment for that of the sentencing court. State v. Roth, 95 N.J. 334, 365, 471 A.2d 370 (1984). "An appellate court should disturb the sentence imposed by the trial court only in situations where the sentencing guidelines were not followed, the aggravating and mitigating factors applied by the trial court are not supported by the evidence, or applying the guidelines renders a particular sentence clearly unreasonable." State v. Roach, 146 N.J. 208, 230, 680 A.2d 634, cert. denied, 519 U.S. 1021, 117 S.Ct. 540, 136 L.Ed.2d 424 (1996) (citing Roth, supra, 95 N.J. at 364-65, 471 A.2d 370); State v. Flores, 228 N.J.Super. 586, 594, 550 A.2d 752 (App.Div.1988), certif. denied, 115 N.J. 78, 556 A.2d 1220 (1989). Modification of a sentence is only proper where the sentence "shocks the conscience." State v. DeRoxtro, 327 N.J.Super. 212, 226, 742 A.2d 1031 (App. Div.2000).
The test "is not whether a reviewing court would have reached a different conclusion on what an appropriate sentence should be; it is rather whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review." State v. Ghertler, 114 N.J. 383, 388, 555 A.2d 553 (1989). Thus, if the sentencing judge reasonably weighed the aggravating and mitigating factors, the sentence should not be disturbed. State v. Megargel, 143 N.J. 484, 494, 673 A.2d 259 (1996); State v. Tarver, 272 N.J.Super. 414, 435, 640 A.2d 314 (App.Div.1994); State v. Murray, 240 N.J.Super. 378, 403, 573 A.2d 488, (App. Div.), certif. denied, 122 N.J. 334, 585 A.2d 350 (1990). It is reasonable to consider other aspects of a defendant's prior record, such as failed attempts to rehabilitate, in adjusting the base term of an extended term. State v. Dunbar, 108 N.J. 80, 90-91, 527 A.2d 1346 (1987).
We have considered defendant's contentions and supporting argument and are satisfied that the sentence is not manifestly excessive or unduly punitive and does not constitute an abuse of discretion. We see no reason to disturb the sentence imposed. State v. O'Donnell, 117 N.J. 210, 215-16, 564 A.2d 1202 (1989); Ghertler, supra, 114 N.J. at 393, 555 A.2d 553; Dunbar, supra, 108 N.J. at 90-95, 527 A.2d 1346; Roth, supra, 95 N.J. at 363-65, 471 A.2d 370.
Affirmed.