**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5683-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CHAYIM GOODMAN,

     Defendant-Appellant.

_____

Argued January 30, 2019 – Decided May 2, 2019

Before Judges Alvarez and Reisner.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Municipal Appeal No. 16-21.

Harry J. Levin argued the cause for appellant (Levin Cyphers, attorneys; Harry J. Levin, on the briefs).

Cheryl L. Hammel, Assistant Prosecutor, argued the cause for respondent (Bradley D. Billhimer, Ocean County Prosecutor, attorney; Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Cheryl L. Hammel, on the brief).

PER CURIAM

Defendant Chayim Goodman appeals from a July 24, 2017 Law Division order denying his municipal appeal after a trial de novo. See R. 3:23-8(a)(2). We affirm.

Defendant was convicted of three driving violations: one charge of reckless driving, N.J.S.A. 39:4-96, and two failures to obey stop signs, N.J.S.A. 39:4-144. The municipal court judge assessed defendant $477 in fines and costs, and suspended his driver's privileges for twenty-one days. The Law Division judge, after also finding defendant guilty of all three summonses, imposed the same penalties.

We draw the facts from the trial record. During the early morning hours of October 30, 2015, while assigned to a "high visibility patrol," Lakewood Police Officer John Ganley noticed defendant's vehicle slowly edge into an intersection before abruptly speeding away. Ganley followed, and witnessed defendant drive straight through a stop sign on Forest Drive at sixty-five miles per hour in a posted twenty-five mile per hour residential zone. Shortly thereafter, Ganley observed defendant ignore another stop sign, this one on the corner of Miller and Hope Chapel Road. As defendant turned onto Hope Chapel Road, Ganley continued to pursue him, estimating defendant's speed at over 100 miles per hour in a posted 40 mile per hour zone. Ganley followed defendant

onto a side street and then activated his lights and siren, pulling defendant over. The dashboard camera began to record once the lights and siren were turned on. While the judge watched the video, Ganley identified defendant's vehicle, the roads they traversed, and estimated defendant's approximate speed.

Defendant unsuccessfully moved to recuse the municipal court judge. He was unable to produce any proof whatsoever of either a conflict of interest or pending ethics charges. The municipal court judge flatly denied the existence of either.

Defendant also sought to dismiss the charges based on the State's inability to provide GPS tracking data. The State had switched GPS providers and did not preserve the information regarding the incident, thus counsel argued that defendant was being denied a fair trial. The municipal court judge denied the application because the trial had been delayed on several occasions to accommodate defendant, who knew about the GPS issue many months prior, and only raised it immediately before the third trial listing. The switch in GPS providers occurred before the request was made.

Defendant, a tow truck driver, testified that on the evening he was pulled over, he was doing "surveillance" as a volunteer for the Lakewood Police. Defendant called the Lakewood retired chief of police in support of his claim.

The chief testified, however, that despite his volunteer work defendant "was not granted any special privileges or immunities."

Defendant denied speeding or driving through stop signs. He further testified that he was uncertain if the car depicted on Ganley's dashboard camera was his until the very end of the film.

The municipal court judge found Ganley's testimony credible and defendant's testimony incredible, and found defendant guilty accordingly. Defendant's extensive record of motor vehicle offenses dated back to 1991, and were accumulated almost every year until 2011, then not again until 2016 when he was found guilty of obstructing traffic, N.J.S.A. 39:4-67. Therefore, in addition to fines and costs, the judge imposed a twenty-one-day license suspension.

Counsel requested a stay of the suspension pending appeal because of defendant's employment. The judge denied the request, explaining: "[t]hat's one of the [mitigating] factors, [but] quite frankly, with that driver history . . . it would have been a much longer suspension . . . ."

Counsel argued to the Law Division judge on the trial de novo that the municipal court judge should have recused himself based on an alleged ethical complaint. He could not produce any evidence of any ethics charges ever having

been lodged against the judge, however.  Counsel also argued that simply raising the issue biased the municipal court judge against defendant, resulting in the imposition of excessive punishment and the judge's refusal to issue a stay despite defendant's employment-related need to drive.

The Law Division judge did not agree the municipal court judge should have recused himself, or showed any bias or unfairness towards defendant.  She observed that the municipal court judge could have but did not impose jail time, levy maximum fines, or impose a longer term of license suspension.  Defendant had absolutely no proof of any alleged conflict or ethics charges brought against the municipal court judge.  That the municipal court judge did not stay the sentence was not "indicative of any bias."

The Law Division judge concluded that the officer's credible testimony alone was sufficient to prove beyond a reasonable doubt that defendant drove recklessly and disregarded two stop signs.  She found the dashboard camera video was sufficiently clear, and the lost GPS data neither exculpatory nor material.  As she said, "[i]t's pure speculation that the GPS records would add anything that the video cannot provide."  Thus, the Law Division judge affirmed the conviction and the sentence.

On appeal, defendant raises the following points:

POINT I

THE POLICE DEPARTMENT'S FAILURE TO MAINTAIN THE GPS DATA AT ISSUE CONSTITUTES SPOLIATION OF EVIDENCE AND THEREFORE THE CASE SHOULD BE DISMISSED

POINT II

THE LAKEWOOD POLICE DEPARTMENT'S FAILURE TO PRESERVE AND PRODUCE THE GPS DATA VIOLATED MR. GOODMAN'S RIGHT TO DUE PROCESS

POINT III

THERE IS INSUFFICIENT CREDIBLE EVIDENCE IN THE RECORD TO SUPPORT THE COURT'S VERDICT

POINT IV

THE LOWER COURT JUDGE ERRED IN FAILING TO RECUSE HIMSELF

POINT V

THE VERDICT OF THE COURT IS EXCESSIVE

I.

When a municipal court decision is appealed, the court "conduct[s] a trial de novo on the record below." R. 3:23-8(a)(2). The Law Division judge makes his or her "own findings of fact and conclusions of law [while] defer[ring] to the

6

municipal court's credibility findings." State v. Robertson, 228 N.J. 138, 147 (2017).

We review the record to determine whether there is "sufficient credible evidence present in the record." State v. Johnson, 42 N.J. 146, 162 (1964). We "should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." State v. Locurto, 157 N.J. 463, 474 (1999) (citing Midler v. Heinowitz, 10 N.J. 123, 128-29 (1952)). Once satisfied with the findings and outcome, our "task is complete and [we] should not disturb the result." Reversal is justified only if the courts' decisions are clearly mistaken "and so plainly unwarranted that the interests of justice demand intervention and correction." Johnson, 42 N.J. at 162.

## II.

Pursuant to the municipal discovery rules, "[a] defense request for discovery shall be made contemporaneously with the entry of appearance by the defendant's attorney, who shall submit a copy of the appearance and demand for discovery directly to the municipal prosecutor." R. 7:7-7(g). The prosecutor must respond to the demand within ten days of the request, and provide any relevant material within "the possession, custody or control of the government."

R. 7:7-7(b). Consequently, the State "is generally not free to destroy discoverable evidence post-complaint under Rule 7:7-7." State v. Robertson, 438 N.J. Super. 47, 70 (App. Div. 2014). "However, [w]ithout bad faith on the part of the State, 'failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" Id. at 67 (quoting George v. City of Newark, 384 N.J. Super. 232, 243 (App. Div. 2006)) (alterations in original).

It is well-settled that the State has a prosecutorial obligation to preserve or disclose any and all evidence favorable to the accused during discovery. Brady v. Maryland, 373 U.S. 83, 87 (1963); see also State v. Nash, 212 N.J. 518, 544 (2013) ("A prosecutor's obligation to 'turn over material, exculpatory evidence to the defendant' is well established and does not require extended discussion."). Suppression of exculpatory evidence violates due process if the evidence is material to either guilt or punishment, regardless of good or bad faith. Brady, 373 U.S. at 87.

The "Brady rule" applies even if a defendant makes no formal request for such material. State v. Martini, 160 N.J. 248, 268 (1999). "In order to establish a Brady violation, the defendant must show that: (1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material." Id. at 268-69 (citing Moore v. Illinois, 408 U.S. 786, 794-95 (1972)).

In order to establish a due process violation, if evidence is simply no longer available, a defendant must prove it had "an exculpatory value that was apparent before [it] was destroyed" and that "the defendant would be unable to obtain comparable evidence by other reasonably available means." State v. Mustaro, 411 N.J. Super. 91, 102-03 (App. Div. 2009) (citing California v. Trombetta, 467 U.S. 479, 489 (1984)).

In addressing timeliness, the Law Division judge, like the municipal court judge, stated that the request for the GPS evidence was first raised during defendant's third trial listing. Defendant's original discovery request did not include GPS data. And, those discovery requests must be made "contemporaneously with the entry of appearance by the defendant's attorney." R. 7:7-7(g). Defense counsel timely requested copies of the summonses and dashboard camera video, just not the GPS data.

As the second prong of the Mustaro test requires, defendant must "be unable to obtain comparable evidence by other reasonably available means." 411 N.J. Super. at 102-03. In this case, the GPS data was not the only method for determining Ganley's location or rate of speed—the dashboard camera display shows Ganley's speed, latitude and longitude. We therefore agree with the Law Division judge that "[i]t's pure speculation that the GPS records would

9

add anything that the video cannot provide." The GPS data is merely duplicative, it is not material. Martini, 160 N.J. at 268-69.

The Lakewood Police Department switched to a new GPS system before defendant's request was made, before the third trial listing. The loss of the information under these circumstances did not establish that the State was seeking to suppress exculpatory information or otherwise destroy information material to defendant's guilt or punishment. See Nash, 212 N.J. at 544.

Defendant has failed to establish a Brady violation. The GPS information was not material, and its unavailability was not prejudicial to defendant's case. Its destruction was incidental to a changeover in systems, and if available would have been cumulative.

### III.

Defendant contends that the record does not support the verdict. The standard governing our review is whether there was "sufficient credible evidence present in the record." Johnson, 42 N.J. at 162. In the absence of "a very obvious and exceptional showing of error[,]" Locurto, 157 N.J. at 474, we do not disturb concurrent findings of fact and credibility determinations. In this case, both courts found the officer's testimony believable. Based on the officer's credible testimony, corroborated by the dashboard camera video, defendant

engaged in excessive rates of speed, including approximately 100 miles per hour in a 40 mile per hour zone, or reckless driving, in addition to ignoring two stop signs.  The record supports these conclusions.  They are not so "unwarranted that the interests of justice demand intervention and correction."  Johnson, 42 N.J. at 162.

## IV.

We consider defendant's argument that the municipal court judge should have recused himself to be so lacking in merit as to not warrant discussion in a written opinion.  See R. 2:11-3(e)(2).  Defendant made baseless accusations towards the municipal court judge, who nonetheless conducted the trial and sentenced defendant in an even-handed and fair manner.

## V.

Finally, defendant argues that the suspension of his driving privileges for twenty-one days was an excessive sentence.  We do not substitute our judgment of the appropriate sentence for that of the sentencing court.  See State v. Munoz, 340 N.J. Super. 204, 221 (App. Div. 2001) (citing State v. Roth, 95 N.J. 334, 365 (1984)).  Nothing about this sentence shocks our conscience.  A twenty-one-day suspension, although a significant consequence, is if anything lenient given the hazard defendant posed to the public while driving that night.

A-5683-16T4

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5683-16T4