**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3191-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TAYYAB WARE,

    Defendant-Appellant.

_____

> Argued October 22, 2024 – Decided February 6, 2025
>
> Before Judges Gooden Brown and Smith.
>
> On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 21-07-0593.
>
> Alyssa Aiello, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Alyssa Aiello, of counsel and on the brief).
>
> Emily M. M. Pirro and Terence J. Ford, Assistant Prosecutors, argued the cause for respondent (John P. McDonald, Somerset County Prosecutor, attorney; Emily M. M. Pirro and Terence J. Ford, of counsel and on the brief).

PER CURIAM

After a jury trial, defendant Tayyab Ware was convicted of murder, as well as robbery and weapons charges. He was sentenced to three concurrent prison terms: thirty-five years for murder, with a thirty-year period of parole ineligibility, fifteen-years for robbery, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2(b); and seven years for the firearms offense, with a forty-two-month period of parole ineligibility.

On appeal, defendant raises three issues. First, he contends the trial court erred by permitting the jury to compare handwriting samples without conducting a hearing outside of the presence of the jury to determine sufficiency of the handwriting samples and then failing to give the jury proper instructions. Second, he argues the prosecutor's improper summation denied him a fair trial and due process of law. Third, he contends that the court's failure to give the jury a cooperating witness charge warrants reversal of his conviction. We are unpersuaded, and we affirm.

I.

We summarize the pertinent facts from the trial. On November 1, 2020, defendant Ware and codefendant Smith drove from Atlanta, Georgia, to New Jersey. On November 2, 2020, they arrived in New Jersey and checked into the

2

Raritan Hotel. When Ware checked into the hotel, surveillance cameras recorded him wearing a NASA jacket and red sneakers. Ware testified that after checking into the hotel, he spent the day drinking while visiting family and friends without Smith. When Smith and Ware reunited later that day, Smith told Ware that he knew of a place where they could gamble. Both men agreed to go to the barbershop to gamble. On their way to the barbershop, Ware and Smith decided to rob it.

While masked, both Smith and Ware entered the barbershop. While they were robbing the barbershop, a gun discharged and killed Denny Sanchez. The surveillance video at the barbershop recorded the shooter wearing a NASA jacket. Over an hour after the murder, the hotel surveillance video recorded Ware being carried into the hotel, seemingly under the influence and wearing different clothes than he had been in before. Smith testified that Ware changed in the backseat "[t]o cover up what just happened," and Ware testified that he left the clothes in the car, but did not know what happened to them. Additionally, detectives obtained cell phone tracking data that also placed Ware's phone in the vicinity of the murder.

On December 22, 2020, Smith was arrested and charged with murder and robbery. Smith gave a post-arrest statement to the police admitting that he was

at the barbershop that night. On December 30, Ware was arrested in his home in Atlanta.

After Ware's arrest, he gave a statement to the detective. Initially, Ware stated he was not at the barbershop on November 2, 2020. He next insisted he had been partying all day and could not remember everything that had happened. Ware also asserted that the surveillance photos of the suspect in the NASA jacket and red sneakers was not him. He stated that he woke up on November 3, the day after the murder, and realized his clothes and shoes were missing.

Ware and Smith were scheduled to be tried jointly. Shortly after jury selection was to begin, Smith agreed to plead guilty to first-degree robbery and testify against Ware in exchange for the State recommending a ten-year prison term and dismissal of the remaining charges.

Just before trial, the State supplied counsel with additional discovery, including unsigned letters implicating Ware as the shooter, which Smith alleged were written by defendant in prison in the summer of 2021. On January 19, 2022, the State supplied counsel with expert reports indicating that defendant's fingerprints were found on the letters. Defense counsel objected to the State calling Smith as a witness at trial, the introduction of the letters, and the expert report. After a hearing, the trial court determined Smith could testify, but barred

4

introduction of the late discovery, including the letters. The State then sought leave to appeal. Before opening statements commenced, we reversed, permitting the State to present at trial both the writings allegedly authored by defendant and expert testimony about defendant's fingerprints on those writings at trial. Defense counsel declined an adjournment to retain a fingerprint expert, and the trial proceeded. Defendant elected to testify at trial.

At trial, Smith testified about the letters defendant allegedly wrote. During cross-examination, defense counsel asked Smith to authenticate his signature on his Miranda[1] form and introduced it into evidence. Defense counsel then questioned Smith about the letters defendant allegedly wrote. Later, the State introduced defendant's Miranda form into evidence by authenticating it through Detective Drews, who had watched defendant sign his Miranda form.

After defendant was convicted and sentenced, he appealed.

On appeal, defendant argues:

POINT I

THE TRIAL COURT ERRED IN PERMITTING THE JURY TO ENGAGE IN HANDWRITING COMPARISON, WHERE THE MATTER HAD NOT BEEN ADDRESSED PRETRIAL, THERE WAS NO RULING ON THE SUFFICIENCY OF THE HANDWRITING SAMPLE OFFERED BY THE

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-3191-21

STATE, AND THE JURORS WERE NOT INSTRUCTED ON HOW TO PROPERLY WEIGH THEIR COMPARISON. (Not Raised Below)

POINT II

THE PROSECUTOR'S IMPROPER SUMMATION DENIED WARE A FAIR TRIAL AND DUE PROCESS, AND REQUIRES REVERSAL. (Not Raised Below)

    A. THE PROSECUTOR IMPROPERLY ARGUED THAT WARE WAS ACTING IN CONFORMITY WITH HIS PROPENSITY TO STEAL.

    B. THE PROSECUTOR BEGAN AND ENDED HIS SUMMATION BY INFLAMING THE PASSIONS OF THE JURY.

    C. THE PROSECUTOR IMPROPERLY DENIGRATED THE DEFENSE.

POINT III

UNDER THE FACTS OF THIS CASE, THE JUDGE'S FAILURE TO GIVE A COOPERATING WITNESS CHARGE REQUIRES REVERSAL. (Not Raised Below)

II.

None of defendant's claims on appeal were properly raised below. If an error was not raised below or objected to at trial, the plain error rule, Rule 2:10-2, applies. State v. Singh, 245 N.J. 1, 13 (2021). "Under that rule, an

6

unchallenged error constitutes plain error if it was 'clearly capable of producing an unjust result.'" Ibid. See also R. 2:10-2. "The mere possibility of an unjust result is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016). "[T]he error will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached." Ibid. (quoting State v. R.K., 220 N.J. 444, 456 (2015)).

"To determine whether an alleged error rises to the level of plain error, it 'must [also] be evaluated in light of the overall strength of the State's case.'" State v. Clark, 251 N.J. 266, 287 (2022) (quoting State v. Sanchez-Medina, 231 N.J. 452, 468 (2018)).

III.

A.

For the first time, defendant challenges the trial court's decision to permit jury comparison of handwriting samples, arguing the trial court committed error by not requiring sufficient authentication of the State's handwriting sample and by providing inadequate instructions to the jury. We disagree.

Our jurisprudence permits juries to compare a defendant's handwriting sample with a disputed document without expert testimony. State v. Carroll, 256 N.J. Super. 575, 593-98 (App. Div. 1992). However, such comparison

7

requires proper authentication of the writing. State v. Marroccelli, 448 N.J. Super 349 (App. Div. 2017) (citing State v. Hannah, 448 N.J. Super. 78, 90 (App. Div. 2016)). Authentication may come from "a witness who has seen the person write, or by correspondence and other business transactions with him obtained personal knowledge of the party's handwriting . . . ." Marroccelli, 448 N.J. at 365.

Here, the jury compared defendant's signed Miranda form to a letter allegedly written by defendant, a permissible comparison under Carroll. Additionally, the record shows that the Miranda form was properly authenticated at trial by the detective who was present when defendant signed the Miranda form, and by defendant himself. Marroccelli was satisfied and there was no error on this issue.

Next, defendant argues that even if the Miranda form was properly authenticated, the State failed to notify the defense of its intent to use the Miranda form in this way and should have been barred by the trial court from doing so. We are unpersuaded.

"The 'opening the door' doctrine is 'a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant or inadmissible in order to respond to (1) admissible evidence that generates an

issue, or (2) inadmissible evidence admitted by the court over objection.'" State v. Prall, 231 N.J. 567 (2018) (citing State v. James, 144 N.J. 538, 554 (1996)). "In other words, it permits 'a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence.'" Ibid.

Here, defense counsel's introduction of Smith's Miranda form "opened the door" for the State's use of defendant's Miranda form. Notably, defendant did not object to the introduction of his Miranda form. When there is a failure to object to testimony, it is presumed counsel did not believe the remarks were prejudicial at the time they were made. State v. Cotto, 471 N.J. Super. 489, 537-38 (App. Div. 2022). It follows that the defense did not find the State's use of defendant's Miranda form as a handwriting sample prejudicial.

Next, defendant argues the court failed to properly instruct the jury so as to eliminate the danger that the jury might assign improper weight to their handwriting sample comparison. Defendant contends that Carroll tells us how the trial court should have instructed the jury concerning the handwriting sample. In Carroll, the relevant portion of the charge stated:

> It is in sharp dispute as to whether the Defendant indeed is the person who wrote the registration at the motel and that is one of the questions that you may wish to consider in evaluating all of the evidence how

important that question is entirely up to you to decide [sic]. [Y]ou may consider the documents and the testimony that you heard about the documents regarding the handwriting on the forms and on the registration certificate at the motel.

There is not, however, any evidence before you of an expert nature on that subject. You did not hear from any expert testimony, nor did you hear any other specific testimony, lay or expert, that would compare or did compare specifically and say that the signature on the card was or was not that of the Defendant. So that is a factor that you may consider in connection with all of the other evidence in deciding how important or how significant or unimportant or insignificant all of that evidence is to be.

[Id. at 595.]

Here the record shows that the jury received sufficient guidance on handwriting sample comparison. In summations, counsel reminded the jury that defendant disputed he wrote the letter, and there was no expert testimony regarding the handwriting samples in evidence. Second, the court properly instructed the jury in its role as finders of fact, and further directed them to rely on the credible evidence and the court's instructions on the law. Specifically, the court stated,

"You, and you alone, are the sole and exclusive judges of the evidence, of the credibility of the witnesses, and the weight to be attached to the testimony of each witness. Regardless of what counsel said or what I may have said in recalling the evidence in this case [it] is

10

your recollection of the evidence that should guide you as judges of the facts."

The jury had more than adequate guidance on this question.

The trial court did not err in permitting the jury to engage in handwriting comparison. The relevant samples were permissibly and properly authenticated, and the jurors were properly instructed on how to weigh the evidence before them. There was no plain error.

B.

For the first time, defendant argues that the prosecutor violated N.J.R.E. 404(b), by using his prior criminal history to infer that he went to the barbershop with the intent to commit a crime. Defendant maintains these comments prejudiced him and warrant a new trial.

Generally, N.J.R.E. 404(b) precludes the admission of evidence pertaining to other crimes or wrongs, except to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." Indeed, "N.J.R.E. 404(b) is a rule of exclusion rather than a rule of inclusion. . . ." State v. Carlucci, 217 N.J. 129, 140 (2014) (quoting State v. P.S., 202 N.J. 232, 255 (2010)).

The Supreme Court in <u>Cofield</u> articulated a four-pronged test to govern the admissibility of such evidence for those permitted purposes. 127 N.J. 328, 338 (1992). The <u>Cofield</u> test requires that:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [<u>State v. Williams</u>, 190 N.J. 114, 122 (2007) (quoting <u>Cofield</u>, 127 N.J. at 338).]

In <u>Williams</u>, however, the Court observed that because the second <u>Cofield</u> factor was "not one that [could] be found in the language of . . . <u>Rule</u> 404(b)," it "need not receive universal application in Rule 404(b) disputes." <u>Id.</u> at 131.

During summations, defense counsel alluded to defendant's lawful prior conduct:

> I have some notes here on this page that I am going to go through before I get into the testimony of the witnesses. You heard that, and it's in evidence, [Defendant] gets a military check every month for his service in the Armed Forces. He cashed that check right before he came up to New Jersey. He doesn't need to rob anybody.

Counsel does not refer to any prior bad acts, but rather refers to defendant's receipt of a monthly stipend related to his previous military service. Counsel's reference appears to be an attempt to persuade the jury that defendant had no motive to rob the victim because he had a legal source of income. We note that the State referred to defendant's own attempts to exculpate himself this way:

> [H]e says, talking about a murder, "I am not even into this type of shit, yo. I do little shit. Like, I may steal, but I ain't into that." Well, I guess if he's stealing from people, he needs money and I guess he was stealing from those people in the barbershop when he went in there to grab that – him and Mr. Smith grabbed that money off the table. Maybe he didn't intend to shoot Denny Sanchez and he didn't think this was going to be a murder. He thought they were just going to go in there and grab some money, a quick hit, in and out[.]

The State's closing comments arguably fall within N.J.R.E. 404(b)'s parameters. However, defendant never objected, and the court did not provide a Cofield limiting instruction. See State v. Marrero, 148 N.J. 469, 495 (1997).

To "determine whether an alleged error rises to the level of plain error, it 'must be evaluated in light of the overall strength of the State's case.'" Clark, 251 N.J. at 287. The record, including the surveillance video introduced at trial, shows the State's case against defendant was overwhelming. Given the overall strength of the State's case, we are satisfied that any error by the trial court in permitting the State's comments on defendant's alleged prior bad acts was not of

13

"sufficient [magnitude] to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." Macon, 57 N.J. at 336.

C.

Defendant argues that he is entitled to a new trial because the State's summation improperly inflamed the jury's passions. The State's challenged comments were embedded in two portions of its summation:

> We are here, ladies and gentlemen, because Denny Sanchez was killed. Okay? It's just the way trials work. You don't see hear a lot about Denny Sanchez, but he's the reason we're here. His life was taken from him. He's a husband, a son, a brother, business owner and his life was snuffed out that night and that's why we're here and you should never lose sight of that as we're considering evidence in this case. This is about somebody having their life snatched from them.
>
>     . . . .
>
> You know, during this trial at the outset, defense counsel asked each of you to look at his client and he asked you if you could give him a fair trial. We all want a fair trial for [defendant]. He is entitled to a fair trial. He is entitled to have you consider the evidence in this trial and he has been given a fair trial. The State has been held to its proofs. The State has provided its evidence in this case, but you know what, a fair trial doesn't mean one that the defendant gets what he wants out of a verdict. Okay? A fair trial is one where justice is served, and the conclusion is the right conclusion. Now, there is someone else who deserves a fair trial here, ladies and gentlemen and I can't tell you to look at him and ask if you'll give him a fair trial because he's

14

not with us anymore. Denny Sanchez, Denny Sanchez was killed that night. He was killed during this robbery, and he deserves a fair trial, and his family deserves a fair trial.

Defendant failed to object to these remarks at trial. "While 'prosecutors in criminal cases are expected to make vigorous and forceful closing arguments to juries' and are 'afforded considerable leeway,' 'their comments [should be] reasonably related to the scope of the evidence presented.'" State v. Supreme Life, 473 N.J. Super. 165, 171-172 (App. Div. 2022) (citing State v. Williams, 244 N.J. 592, 607 (2021)) (quoting State v. Frost, 158 N.J. 76, 82 (1999)). "Furthermore, even when a prosecutor's remarks stray over the line of permissible commentary, [the] inquiry does not end. Rather, [the court must] weigh 'the severity of the misconduct and its prejudicial effect on the defendant's right to a fair trial,' and . . . reverse a conviction on the basis of prosecutorial misconduct only if 'the conduct was so egregious as to deprive defendant of a fair trial.'" Supreme Life, 473 N.J. at 171-172 (citing State v. McNeil-Thomas, 238 N.J. 256, 275 (2019)). "To warrant the remedy of a new trial, there must have been 'some degree of possibility that [the prosecutor's comments] led to an unjust result.'" McNeil-Thomas, 238 N.J. at 276.

The prosecutors' comments during summation do not constitute plain error, as defendant has failed to show they were inflammatory or prejudicial.

Defendant additionally argues the prosecutor's summation "improperly denigrated the defense" by using "disparaging language to refer to defense counsel's arguments and testimony."

"[A]lthough a prosecutor has considerable leeway in presenting summation, [they] may not exceed the parameters of "permissible forceful advocacy established by decisional law." State v. Munoz, 340 N.J. Super. 204 (App. Div. 2001). "It is improper for a prosecutor during summation to demean the role of defense counsel or cast unjust aspersions upon lawyer's motives." Ibid. "However, [it is] not improper for a prosecutor to comment on the credibility of a defense witness's testimony." Ibid. To deprive defendant of his right to a fair trial warranting reversal, the prosecutor's comments must be sufficiently egregious. Id. at 219.

Defendant argues the State made certain comments during summation which were demeaning. Our thorough review of the record leads us to conclude that the State's comments, when viewed as a whole, did not preclude defendant from having a fair trial.

D.

Finally, defendant contends that the court's failure to sua sponte charge the jury with the cooperating co-defendant or witness model charge deprived

16

him of his right to due process and a fair trial.  See Model Jury Charges (Criminal), "Testimony of a Cooperating Co-Defendant or Witness," (rev. Feb. 6, 2006).

We begin with the model charge.  Testimony of a Cooperating Co-Defendant or Witness states, in pertinent part:

> The law requires that the testimony of such a witness be given careful scrutiny.  In weighing (his/her) testimony, therefore, you may consider whether (he/she) has a special interest in the outcome of the case and whether (his/her) testimony was influenced by the hope or expectation of any favorable treatment or reward, or by any feelings of revenge or reprisal.  If you believe this witness to be credible and worthy of belief, you have a right to convict the defendant on his/her testimony alone, provided, of course, that upon a consideration of the whole case, you are satisfied beyond a reasonable doubt of the defendant's guilt.
>
> [Model Jury Charges (Criminal), "Testimony of a Cooperating Co-Defendant or Witness," (rev. Feb. 6, 2006).]

In the context of a cooperating codefendant, this charge, also known as the "'accomplice rule,' [gives] specific cautionary instruction that the evidence of an accomplice must be carefully scrutinized and assessed in the context of his interest in the proceeding." State v. Artis, 57 N.J. 24, 33 (1970).  "Although the accomplice…charge is ordinarily for the benefit of the defendant[,]…an instruction [of this] charge may be to defendant's disadvantage because the very

use of 'accomplice' has an opprobrious and detrimental connotation[,] that the defendant whom he has implicated is likewise a guilty participant in the crime." State v. Gardner, 51 N.J. 444, 461 (1968) (citing State v. Begyn, 34 N.J. 35 (1961)). Therefore, "due to the possible prejudice to the defendant, it is "generally not wise to give such a charge absent a request." Artis, 57 N.J. at 33. It is "[c]ertainly…not error, let alone plain error, for a trial judge to fail to give this cautionary comment where it has not been requested." Id. at 24.

Defendant did not request the instruction at trial. It follows that the Supreme Court's guidance in Artis controls.

Affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18